**OASIS CORPORATION,**
**et al., Plaintiffs,**

v.

**Dan A. JUDD, et al., Defendants.**

**No. 00CV178.**

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 21, 2001.

Daniel William Costello, Porter Wright Morris & Arthur, Columbus, OH, Gregory H. Guillot, Washington, DC, for Plaintiffs.

Eric Jay Wittenberg, Eric J. Wittenberg Co. LPA-2, Columbus, OH, for Defendants.

## *OPINION AND ORDER*

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on an amalgamation of pleadings: (1) the untitled submission of Defendant Dan A. Judd, purporting to represent both himself and Defendant Electronic Product Development, Inc. ("EPD"), filed on March 10, 2000; (2) the Motion for Protective Order filed by Attorney Eric J. Wittenberg on behalf of Defendants Judd and EPD on March 29, 2000; (3) the Motion for Default Judgment of Plaintiffs Oasis Corporation ("Oasis"), Norman Murphy and Peter L. Benua, filed on March 31, 2000; (4) Defendants' Amended Joint Motion To Dismiss for Lack of Personal Jurisdiction, Motion To Change Venue, Motion To Vacate Default, and Memorandum in Opposition to Motion for Default Judgment, filed on April 12, 2000; and (5) Plaintiffs' Opposition to Defendants' Amended Joint Motion, filed on May 19, 2000.

For the following reasons, the Court, pursuant to Federal Rule of Civil Procedure 55(c), **VACATES** the Defaults entered against Defendants on March 13, 2000, and, pursuant to Federal Rule of Civil Procedure 12(b)(2), **DISMISSES** Plaintiffs' Complaint.

### II. FACTS

Plaintiff Oasis is an Ohio corporation, with its principal place of business in Columbus, Ohio. Oasis's products, which consist of water coolers and related items, are made and assembled in the United States, Europe and Central America, and are dis-

tributed throughout the United States and to more than ninety countries abroad. Plaintiff Murphy is a resident of Ohio, and the Chief Financial Officer of Oasis. Plaintiff Benua is a resident of Ohio, and the President of Oasis.

Defendant Judd is a resident of Oklahoma, and the President of EPD. Defendant EPD, a computer software design company, is an Oklahoma corporation, with its principal place of business in Pryor, Oklahoma. Defendant Judd has never been to Ohio; Defendant EPD has never conducted business in Ohio.

On February 6, 1998, a fire burned out the building where EPD was a tenant. Defendants came to believe that the cause of the fire was an Oasis water cooler, which had been leased to another building tenant. Defendants' efforts to secure compensation for the losses they sustained in the fire from their insurer, Chubb Insurance ("Chubb"), and/or Oasis were unsuccessful.

On December 31, 1998, Defendant Judd registered the domain name, "boycott-em. com." Sometime thereafter, Defendants launched a "gripe site" at http://www.boycott-em.com. The computers hosting Defendants' web site are not located in Ohio. On their site, Defendants voiced—and continue to voice—their complaints about Chubb, Oasis, and officers and employees of both companies. At times, Defendants have displayed Oasis-registered trademarks and trade names on the site. Defendants also have made available—and continue to make available—the email addresses and telephone numbers of officers and employees of Chubb and Oasis at http://www.boycott-em.com. For some time in 1999, the site contained an "automatic letter-generating system" which allowed visitors to the site to dispatch pre-written letters to the media and Oasis with a single "click." The site has never offered any good or service for lease or sale; it has never been used in the commerce of anything beyond ideas, irrespective of their truth or falsity. Several "copycat" sites

"mirroring" http://www.boycott-em.com have come and gone since early 1999.

On February 17, 2000, Plaintiffs filed their Complaint in this Court, seeking monetary damages in excess of thirteen million dollars and injunctive relief prohibiting Defendants from using their web site to comment on Plaintiffs' products and actions. Plaintiffs allege the following violations: trademark infringement, false designation of origin, false descriptions, false representations and dilution of a famous mark, under the Lanham Act, 15 U.S.C. § 1051; trademark infringement, trademark dilution, trade libel, injurious falsehood, product disparagement, defamation, invasion of privacy and false light invasion of privacy, under Ohio common law; and violation of the Ohio Deceptive Trade Practices Act, OHIO REV.CODE § 4165.01. Plaintiffs assert that both federal question jurisdiction and diversity jurisdiction exist in this matter.

Defendants were personally served in Pryor, Oklahoma, on February 18, 2000. An uncaptioned pleading submitted by Defendant Judd was filed on March 10, 2000. In the pleading, Judd stated:

> Comes now DANIEL A. JUDD, Pro Se, in a special appearance on behalf of himself and ELECTRONIC PRODUCT DEVELOPMENT, INC., in the above-styled matter. . . .

> I am contesting Jurisdiction and Venue because I have never been in Ohio, I have never lived in Ohio, ELECTRONIC PRODUCT DEVELOPMENT, INC., is an Oklahoma Corporation located in Oklahoma, which has never done business in Ohio.

Judd further noted: "I am attempting to locate professional legal counsel for this matter. As I am essentially indigent, that may prove fruitless. Nevertheless, I am attempting to do so."

On March 29, 2000, less than one week after being retained, Attorney Wittenberg filed his first pleading on behalf of Defendants. Therein, Defendants asserted: "De-

fendants have a good faith belief that they have valid objections to this Court's jurisdiction over this matter, since both Defendants are residents of the State of Oklahoma. If this matter is not settled in the next few days, they intend to brief these issues for the Court...." On April 12, 2000, Defendants followed through and filed their Amended Joint Motion.

On March 13, 2000—twenty-five days after filing their Complaint, twenty-four days after serving Defendants in Oklahoma and three days after Judd filed his uncaptioned pleading [1]—Plaintiffs requested that the Clerk of the Court enter Defaults as to both Defendants. The Clerk did so.

On May 19, 2000, Plaintiffs filed their Opposition to Defendants' Amended Joint Motion To Dismiss for Lack of Personal Jurisdiction, Motion To Change Venue, Motion To Vacate Default, and Memorandum in Opposition to Motion for Default Judgment, and Consolidated Memorandum in Support.

## III. DEFAULTS

### A. Standard

Rule 55(c) establishes that "[f]or good cause shown, the court may set aside an entry of default...." FED.R.CIV.P. 55(c). The Sixth Circuit enunciated the test to be applied in determining "good cause" in *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839 (6th Cir.1983), holding:

The criteria to be considered in applying the Rule 55(c) standard of good cause....

... [are]:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

*Id.* at 844–45 (citations omitted). The *United Coin* court noted that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases," *id.* at 845, and that "[m]ere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment." *Id.* (citation omitted). Finally, the Sixth Circuit has been explicit that " '[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.' " *Id.* at 846 (quoting *Rooks v. American Brass Co.*, 263 F.2d 166, 169 (6th Cir.1959) (per curiam)).

The Sixth Circuit has also noted that defects in personal jurisdiction are generally not waived by default when a party fails to appear or respond. *See Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1120–21 (6th Cir.1994) (reversing as an abuse of discretion the district court's denial of a Rule 60(b)(4) motion for relief when a default judgment was entered against a defendant not properly subject to personal jurisdiction).

### B. Analysis

With respect to prong one of the *United Coin* test, the Court finds that setting aside the Defaults entered in the matter *sub judice* would inflict no cognizable prejudice upon Plaintiffs. Plaintiffs assert that setting aside the Defaults would "delay Plaintiffs' day in court," and would mean that the money Plaintiffs paid their counsel to oppose Defendants' Motion To Vacate Default would have been wasted. While these claims are undoubtedly true, at least to a certain extent, this Court is bound to reject Plaintiffs' first argument by Sixth Circuit precedent, *United Coin*, 705 F.2d at 845, and finds

1. The pleading is labeled on this case's docket sheet as an Answer and is construed by this Court as a Motion To Dismiss.

Plaintiffs' second argument to be entirely specious.[2]

Plaintiffs fare no better with respect to prong two. Not only does this Court find Defendants' arguments challenging personal jurisdiction to be persuasive,[3] but the Court also cannot imagine how, were they to outlive the instant Motion To Dismiss, Plaintiffs' federal claims or state intellectual property claims could survive a motion for summary judgment.[4] As to Plaintiffs' defamation-based state law claims, Defendants have made a strong enough showing as to the truth of the assertions about which Plaintiffs complain to clear the "meritorious defense" bar with ease. This Court therefore finds that Defendants have multiple meritorious defenses to Plaintiffs' claims.

Finally, this Court finds that the conduct of Defendants resulting in the Defaults was only minutely, if at all, culpable. Defendant Judd's pleading challenging the jurisdiction of this Court was filed twenty-one days after the time for filing his Answer began to run. His pleading was therefore a single day late. FED.R.CIV.P. 12(a)(1)(A). It appears to this Court that, far from being guilty of willful misconduct, Defendants made a concerted effort to comply with the procedural requirements of the Federal Rules, falling ever-so-slightly shy of full technical compliance principally as a result of lack of training in the requirements of the rules of pleading embodied in the Federal Rules of Civil Procedure.[5] As a lay person proceeding pro se, this is understandable. Indeed, Judd's initial *pro se* status militates in his favor, as the formalities of the Federal Rules of Civil Procedure are to be applied less stringently against *pro se* litigants than against lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

In balancing the hint of culpability possibly present in Defendants' tardy filing against Defendants' meritorious defenses to Plaintiffs' questionable claims and the lack of cognizable prejudice to be inflicted upon Plaintiffs following the vacation of the Defaults, this Court finds the tilt in favor of setting aside the entries of Default to be overwhelming.

Accordingly, the Court hereby **VACATES** the Defaults entered against Defendants Judd and EPD on March 13, 2000.

---

**2.** In our adversarial system, money is "wasted" on losing motions constantly; such "wasted money" does not, however, equate to prejudice.

**3.** *See* discussion *infra* Part IV.

**4.** The primary purpose that trademark law seeks to address is the avoidance of consumer confusion as to the source or sponsorship of goods or services. J. THOMAS McCARTHY, McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 2.01 (4th ed.2000); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989) (noting that "[t]he law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source.").

In the matter *sub judice*, Plaintiffs have filed stacks of print-outs allegedly generated from pages of Defendants' web site. While not passing on an issue not properly before it, this Court fails to see how any consumer could possibly be misled into believing that such pointed attacks on Oasis could have been made or sponsored by Oasis itself. That is, Plaintiffs' federal claims—all of which are brought under the Lanham Act—and state intellectual property claims—which are brought under Ohio common law and the Ohio Deceptive Trade Practices Act—appear to be without merit.

**5.** Under more egregious circumstances, the Court has found that vacation of a default judgment was proper when personal jurisdiction was lacking. In *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir.1994), without any reference to the *United Coin* test, the Sixth Circuit found that the district court abused its discretion in denying a Motion To Vacate that formed part of the defendant's first appearance before the court and was filed two-and-one-half months after the entry of a default *judgment* and more than eight months after the suit was filed. *Id.* at 1121. This ruling by the *Reynolds* court was apparently based on the court's holding that personal jurisdiction over the defendants was lacking. *Id.* at 1120–21.

## IV. PERSONAL JURISDICTION

There are three salient facts that control this Court's decision finding no personal jurisdiction in this matter: (1) the alleged wrongs for which Plaintiffs seek redress have their geneses solely in the content of Defendants' web site; (2) that site is non-commercial in nature; and (3) neither Judd, EPD nor Defendants' web site has any inherent connection to Ohio.

### A. Standard

██ It is axiomatic that, when Congress has not provided for the nationwide service of process in the statute under which the plaintiff has brought suit, this Court "must apply the law of the forum state to determine whether it may exercise jurisdiction over a non-resident defendant." *Vorhis v. American Med. Systems, Inc.*, No. 96–3525, 1997 WL 476527, at *1 (6th Cir. Aug.19, 1997) (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988)). There is a two-step analysis to determine personal jurisdiction under the laws of Ohio, the forum state in this case: "(1) ... whether the state's 'long-arm' statute and the applicable Civil Rule confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 543 (1994) (quoting *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 624 N.E.2d 1048, 1051 (1994)). Ohio's long-arm statute does not extend jurisdiction fully to the limits of due process. *Goldstein*, 638 N.E.2d at 545 n. 1. Thus, merely finding that jurisdiction comports with federal due process standards is not sufficient in Ohio; rather, both prongs of the analysis must be satisfied. *Id.*

The burden of establishing jurisdiction generally lies with the plaintiff. *American Greetings Corp.*, 839 F.2d at 1168. When a court does not conduct an evidentiary hearing on the matter, the plaintiff need make only a *prima facie* showing of personal jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *CompuServe, Inc., v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996). This essentially means that the court is required to view the jurisdictional evidence in the light most favorable to the plaintiff. *See Christiansen*, 638 N.E.2d at 544. When jurisdiction is challenged, however, the plaintiff may not rely solely on the pleadings in the case; rather, he must show by affidavit or other documentary evidence specific facts establishing personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991).

### 1. Personal Jurisdiction under Ohio Law

The Ohio long-arm statute, section 2307.382 of the Ohio Revised Code, provides, in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

. . .

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

. . .

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

. . . .

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

OHIO REV.CODE § 2307.382. The first step in considering whether personal jurisdiction over a defendant sued in tort exists is thus to determine if acts or omissions of the defendant resulted in tortious injury either (1) in Ohio, or (2) through criminal means, bearing in mind that in either case, the cause of action asserted must "arise from" the act which is claimed to confer personal jurisdiction over the defendant.

## 2. Personal Jurisdiction Consistent with Due Process

The Court also must consider whether the jurisdiction granted under the long-arm statute is consistent with " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). When a defendant engages in "continuous and systematic" conduct within the forum state, he may be rendered amenable to suit in any lawsuit brought against him in the forum state. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996). When the defendant has not engaged in such conduct, the plaintiff must establish specific jurisdiction by showing that "the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Id.* The Supreme Court has explained the interplay between specific jurisdiction and due process:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the traditional notions of fair play and substantial justice are] satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.

*Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations omitted).

The Sixth Circuit has an established three-part test in determining whether specific jurisdiction exists:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable."

*Reynolds,* 23 F.3d at 1116 (quoting *In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 226 (6th Cir.1972)). To satisfy the first requirement, the defendant must be shown to have intentionally taken actions that create a "substantial connection" with the forum state, such that the defendant "should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The second prong requires that the plaintiff establish the essence of personal jurisdiction: the suit against the defendant must be based upon the defendant's contacts with the forum. *Nationwide,* 91 F.3d at 793. In determining when the exercise of jurisdiction over a defendant is reasonable, as required by prong three, the court must consider:

> the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *World–Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

## B.  Analysis

Plaintiffs argue first that Defendants waived their right to challenge personal jurisdiction when they let more than twenty days pass between being served with the Complaint and filing any responsive pleading.  In the alternative, Plaintiffs claim that this Court has personal jurisdiction over Defendants pursuant to subsections (4), (6) and/or (7) of section 2307.382(A) of the Ohio Revised Code, and that asserting such jurisdiction would not violate the due process clause of the Fourteenth Amendment.[6]

### 1.  Waiver

■  Rule 12(h)(1) provides that a defendant waives his right to contest personal jurisdiction by failing to raise the objection when making a responsive pleading or general appearance:

A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g),[7] or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

FED.R.CIV.P. 12(h)(1).  The Rule specifically does *not* provide that a defendant's right to challenge personal jurisdiction is waived if his responsive pleading is untimely.  *Id.*

Plaintiffs, though, would have this Court rule on their waiver argument by applying Rule 12(a), "When Presented," instead of Rule 12(h), "Waiver or Preservation of Certain Defenses."  Plaintiffs argue that Defendant Judd's *pro se* Motion To Dismiss was filed one day beyond the twenty he was allotted to respond to Plaintiffs' Complaint by Rule 12(a)(1)(A), and thus any objection he may have had to personal

6. Plaintiffs actually argue that this Court should evaluate the constitutional concerns in exercising personal jurisdiction in light of the due process clause of the Fifth Amendment rather than that of the Fourteenth.  Plaintiffs claim that *International Shoe* and its progeny are applicable only to those actions wherein subject matter jurisdiction is established solely on the basis of diversity, and that in cases where—as here—a federal question is also raised, *International Shoe* et al. are simply inapposite.  In support of this rather unusual position, Plaintiffs rely almost exclusively on *Haile v. Henderson National Bank*, 657 F.2d 816 (6th Cir.1981).  Such reliance is badly misplaced:

> The majority today does not ... conclude that the *International Shoe* analysis must be limited merely to questions involving a state's power to compel the appearance of non-resident defendants before courts within the borders of the state, or that the analysis does not apply to federal question cases generally.  Quite to the contrary, the minimum contacts analysis properly applies to extraterritorial assertions of personal jurisdiction by state courts, by federal courts sitting in diversity, and in other cases where a federal court must borrow a state long-arm statute in order to acquire personal jurisdiction over a non-resident defen-

dant. The analysis will apply whether the federal court's subject matter jurisdiction is based on a federal question (28 U.S.C. § 1331) or diversity of citizenship (28 U.S.C. § 1332). It is only where, as here, Congress has provided for nationwide service of process that the *International Shoe* analysis becomes inapposite.

*Id.* at 826 n. 10.

Plaintiffs also aver that asserting personal jurisdiction over Defendants in this matter would be inoffensive to the due process clause of the Fourteenth Amendment; it is this argument which the Court will evaluate in Part IV.B.3, *infra.*

7. Subdivision (g) reads:

A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

FED.R.CIV.P. 12(g).

jurisdiction was waived. Plaintiffs also note that "[a]n officer of a corporation, who is not a licensed attorney, is not authorized to make an appearance in this Court on behalf of the corporation," *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970), and that Defendant EPD thus did not properly appear or raise its objection to this Court's jurisdiction over it until March 29, 2000, twenty days beyond the Rule 12(a)(1)(A) deadline. Plaintiffs assert that such tardiness effected a waiver of EPD's right to challenge personal jurisdiction.

While Plaintiffs' Rule 12(a) argument is probably not frivolous for the purposes of Rule 11, it is without merit. In *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir.1994), the Sixth Circuit joined the ranks of courts that "have generally held that '[d]efects in personal jurisdiction ... are not waived by default when a party fails to appear or respond.'" *Id.* at 1120 (quoting *Williams v. Life Saving & Loan*, 802 F.2d 1200, 1202 (10th Cir.1986)) (citing *Hugel v. McNell*, 886 F.2d 1, 3 n. 3 (1st Cir.1989) (noting that "[defendants] made no appearance prior to final judgment and thus never waived the defense of lack of personal jurisdiction"); *Pacific Atlantic Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir.1985) (holding that a default judgment entered without personal jurisdiction was void)). Rather, the waiver of the right to contest personal jurisdiction only occurs if the defendant fails to raise the issue when making a responsive pleading or general appearance, and is unable to cure the failure. *Id.* at 1120–21.

In this case, it is uncontested that Defendants voiced their objections to this Court's jurisdiction over them in their initial filings, and that they have continued to press the issue without interruption. Defendant Judd's *pro se* Motion To Dismiss

effectively challenged this Court's jurisdiction over him and purportedly, if ineffectively, challenged jurisdiction over Defendant EPD.[8] Attorney Wittenberg's Motion for Protective Order—the first filing to which EPD was properly a party—raised the objection to personal jurisdiction on behalf of both Defendants.

Thus, the Court finds that Defendants have not waived their rights to contest personal jurisdiction, and will proceed to evaluate the propriety of finding that such jurisdiction exists in this lawsuit.

### 2. Ohio Long Arm Statute

Plaintiffs argue that asserting jurisdiction over Defendants in the instant action would be proper under subsections (4), (6) and/or (7) of the Ohio long-arm statute. Subsections (4) and (6) require that the tortious injury occur in Ohio. OHIO REV. CODE § 2307.382(A)(4), (6). Subsection (7) requires that the tortious injury be caused by a criminal act. OHIO REV.CODE § 2307.382(A)(7). In each case, "only a cause of action arising from [the acts which are claimed to establish personal jurisdiction over the defendant] may be asserted against him." OHIO REV.CODE § 2307.382(C).

■ Though the Sixth Circuit has not explicitly considered this issue, the Third Circuit has noted: "It is undisputed that a cause of action for trademark infringement arises where the passing off occurs." *Tefal, S.A. v. Products Intern. Co.*, 529 F.2d 495, 496 n. 1 (3d Cir.1976); *see also Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.1956) (noting that in cases of trademark infringement, "the wrong takes place ... where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's."); *Bath & Body Works, Inc. v. Wal–Mart Stores, Inc.*, No. C–2–99–1190, 2000 WL 1810478,

---

**8.** This Court holds Judd's initial pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S. at 520, 92 S.Ct. 594. The Court will, therefore, look

to the substance of Judd's objections, both of which challenged jurisdiction over him and EPD.

at *4 (S.D.Ohio Sept.12, 2000) (Sargus, J.) (noting that "an act of trademark infringement occurs where the sale of the infringing product occurs."). In order to establish a trademark-based injury in Ohio, therefore, Plaintiffs must show that consumers in Ohio have been confused as to the source or sponsorship of the purportedly infringing marks. It is of little, if any, moment that the holder of the marks is an Ohio company. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed.Cir.1994) (bringing the law of patent infringement into line with that of trademark and copyright infringement by holding that the plaintiff's injury occurs at the place of sale rather than where the plaintiff resides, and noting that "analysis of long-arm jurisdiction has its focus on the conduct of the defendant. Plaintiff's contacts with the forum—such as where the plaintiff resides—as a general proposition are not considered a determinative consideration.").

In the matter *sub judice,* Plaintiffs do not allege—and have produced no evidence to suggest—that a single consumer has been confused as to the source or sponsorship of the purportedly infringing marks, much less that any resident of Ohio has been so confused. Rather, they would have this Court find that Oasis has suffered trademark-based injuries in Ohio because Oasis is an Ohio company. Plaintiffs' line of reasoning has been explicitly rejected by the Federal Circuit, *id.* at 1570–71, and implicitly rejected by the Second Circuit, *Vanity Fair Mills,* 234 F.2d at 639, and the Third Circuit. *Tefal,* 529 F.2d at 496 n. 1. It is also unpersuasive to this Court. The Court therefore finds that Plaintiffs have failed to allege specific facts—or adduce any evidence—that would support a finding that they have suffered trademark-based injuries in Ohio.

■ As to Plaintiffs' defamation-based claims, they do not allege that the purportedly defamatory remarks have been communicated to any third person in Ohio; they likewise have adduced no evidence to support such a finding. Plaintiffs apparently would have this Court find that they have suffered defamation-based injuries in Ohio through the same faulty reasoning as they assert for their trademark-based claims: Plaintiffs are the ones who are claiming to have been injured and Plaintiffs are residents of Ohio. As the "analysis of long-arm jurisdiction has its focus on the conduct of the defendant," *Beverly Hills Fan,* 21 F.3d at 1571, this Court finds such an argument no more persuasive in the defamation context than it was in the trademark infringement context.

This Court therefore finds that Plaintiffs have neither alleged facts nor adduced evidence tending to show that Plaintiffs suffered tortious injury in Ohio. Since injury in Ohio is a requirement of establishing personal jurisdiction under subsections (4) and (6) of the Ohio long-arm statute, this Court finds that Defendants are not subject to personal jurisdiction on the basis of either of those subsections.

■ Subsection (7) does not require that the injury complained of be suffered in Ohio, so long as the tortious injury occurs as a result of a criminal act, and at least one element of that act takes place in Ohio. OHIO REV.CODE § 2307.382(A)(7). When personal jurisdiction is based upon Ohio's long-arm statute, however, the claims levied against the defendant must arise from the same conduct that establishes the personal jurisdiction over the defendant. OHIO REV.CODE § 2307.382(C).

In this case, Plaintiffs assert that Defendants' numerous phone calls, faxes and e-mail messages seeking money and threatening Defendants amount to a violation of Ohio's prohibition of extortion, OHIO REV. CODE § 2905.11. Even assuming, *arguendo,* that Plaintiffs are correct in their analysis of Ohio's criminal law, the fact remains that none of the causes of action asserted by Plaintiffs in this lawsuit arises from Defendants' allegedly extortionate activities. Rather, the causes of action asserted by Plaintiffs arise from Defendants' alleg-

edly infringing and defamatory activities. Defendants are not, therefore, subject to personal jurisdiction under subsection (7) of Ohio's long-arm statute. OHIO REV.CODE § 2307.382(C).

Because Plaintiffs have neither alleged facts nor adduced evidence tending to show that they have suffered tortious injury in Ohio, and because Plaintiffs have not asserted any causes of action based upon the purported crimes of Defendants, this Court finds that it may not assert personal jurisdiction over Defendants pursuant to Ohio's long-arm statute. OHIO REV.CODE § 2307.382.

### 3. Due Process

Even if this Court had authority under Ohio's long-arm statute to exercise personal jurisdiction over Defendants in the present matter, the use of such authority would still have to be inoffensive to the due process clause of the Fourteenth Amendment.

Here, Plaintiffs do not allege that Defendants are subject to general jurisdiction in Ohio; instead, they assert that Defendants' contacts with the forum subject them to specific jurisdiction. In their Briefs, Plaintiffs point primarily to the aforementioned barrage of phone calls, faxes and e-mail messages from Defendants to Plaintiffs as the contacts with Ohio from which this Court should find Defendants are subject to personal jurisdiction here. Plaintiffs do not, however, press a single cause of action arising out of that onslaught of communications by Defendants. Rather, every claim asserted by Plaintiffs in this case has its genesis in the content of Defendants' web site. As an action is deemed not to have arisen from the defendant's contacts with the forum state when those contacts are unrelated to the operative facts of the controversy, *Creech v. Roberts*, 908 F.2d 75, 80 (6th Cir.1990), this Court must determine if personal jurisdiction may be asserted over Defendants solely on the basis of the substance and functions of Defendants' web site.

With the issue thus properly framed, this Court will utilize the three-part test developed by the Sixth Circuit to determine if the exercise of personal jurisdiction over Defendants would comport with the due process clause of the Fourteenth Amendment: [9]

1. Whether the defendant has purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state;

2. Whether the cause of action has arisen from the defendant's activities in the forum state; and, if so,

3. Whether the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*In–Flight Devices*, 466 F.2d at 226.

#### a. Actions and Consequences

As explained above, *see* discussion *supra* Part III.B.2, Defendants have caused no cognizable consequences in the forum state. Defendants' actions in Ohio are limited to the communications they have made directly to Oasis.

#### b. Arising from Activities

█ The Ohio-connected activities of Defendants do not give rise to the causes

---

**9.** The Court notes that both parties briefed this issue in terms of the newly-developing field of "Internet jurisdiction." The vast majority of the "Internet jurisdiction" case law at this time, however, addresses the jurisdictional question in the context of *commercial* web sites. *See, e.g., Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir.1999); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). When, as here, the site in question is non-commercial in nature, the *Zippo* analysis which seems to be gaining favor in the courts of appeal offers little to supplement the traditional framework for considering questions of personal jurisdiction. *See Mink*, 190 F.3d at 336.

of action for which Plaintiffs seek redress. Plaintiffs claim that their trademarks have been damaged, their reputations defamed and their privacy invaded, all on Defendants' web site. The computers hosting Defendants' site are not located in Ohio, there has been no meaningful interactivity between the site and a significant number of Ohioans, and the site is not directed toward an Ohio audience.[10] The actions that Defendants have taken in Ohio-that is, the communications made directly to Oasis—are simply unconnected to the claims asserted by Plaintiffs. This Court, in evaluating the constitutionality of exercising personal jurisdiction over Defendants, must look not to those communications, but only to Defendants' non-commercial web site. As far as this Court has been able to ascertain, no federal court has ever upheld personal jurisdiction solely on the ground that the defendant's web site happened to be accessible from the forum state; this Court shall not be the first. Such jurisprudence would necessarily effectuate an evisceration of the *International Shoe* line in the Internet context, and would lead to nationwide personal jurisdiction over every web site owner for any cause of action arising from the content of his site. Additionally, because the federal courts have thus far refused to embrace such jurisdictional jurisprudence, web site owners certainly do not "have 'fair warning that [the content of their respective sites] may subject [them] to the jurisdiction of a foreign sovereign,'" *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment)), as the strictures of due process require.

#### c. Reasonableness

Because the causes of action asserted by Plaintiffs do not arise out of Defendants' contacts with the forum, and because the activities complained of have caused no

cognizable injury in Ohio, exercising personal jurisdiction over the Defendants would necessarily be unreasonable. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir.2000) (noting that "[t]he purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction"); *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1151 (6th Cir.1990) (noting that in order for a court to have personal jurisdiction, "the cause of action must arise from the defendant's activities [in the forum state]."); *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 384 (6th Cir .1968) (suggesting that reasonableness is possible only when the "arises out of" inquiry is satisfied).

#### d. *Calder* Distinguised

Plaintiffs' last best effort to establish the constitutionality of exercising personal jurisdiction over Defendants lies in the case of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, a professional entertainer sued the writers and editors of a Florida tabloid for libel in a California court. The Supreme Court concluded that the defendants were subject to personal jurisdiction in California because:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm ... was suffered in California. In sum, California is the focal point both of the story and the harm suffered.

*Id.* at 788–89, 104 S.Ct. 1482.

At first blush, *Calder* appears to support Plaintiffs' position. *Calder*, however, must be read in light of *Reynolds*. In *Reynolds*, an Ohio athlete sued an international organization in federal court in Ohio over a press release which the plaintiff alleged

---

**10.** While it is obvious that Oasis, an Ohio company, is the *subject* of Defendants' web site, there is no evidence to suggest that De-

fendants have targeted Ohioans as an *audience* for their site any more vigorously than Oregonians, Oklahomans or Omanis.

**624**

was defamatory. In distinguishing the case from *Calder*, the Sixth Circuit found that the exercise of personal jurisdiction in Ohio would not pass constitutional muster:

> We find *Calder* distinguishable for several reasons. First, the press release concerned [the plaintiff's] activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, [the plaintiff] is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the "focal point" of the press release. The fact that the [defendant] could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction.

*Reynolds*, 23 F.3d at 1120 (citing *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. 559).

The facts of this case much more closely resemble *Reynolds* than *Calder*. First, Defendants claim on their site that a defective Oasis water cooler started a fire in Oklahoma, not Ohio. Second, Oasis is an international company whose reputation is not centered in Ohio. Third, Defendants' site does not specifically target an Ohio audience. As in *Reynolds*, "[t]he fact that [Defendants] could foresee that [their proclamations would be viewed] and have an effect in Ohio is not, in itself, enough to create personal jurisdiction." *Id.*

This Court finds that, even if it were permitted by the Ohio long-arm statute to exercise personal jurisdiction over Defendants in the matter *sub judice*, the utilization of such authority would be offensive to the due process clause of the Fourteenth Amendment.

## V. CONCLUSION

For the foregoing reasons, the Court **VACATES** the Defaults entered against Defendants on March 13, 2000 and **DISMISSES** Plaintiffs' Complaint. All other motions pending in this matter are rendered **MOOT** by this Order.

**IT IS SO ORDERED.**