OPINION *Page 2 
{¶ 1} Plaintiff-appellant Kauffman Racing Equipment, LLC ("Kauffman Racing") appeals the June 1, 2007 Judgment Entry entered by the Knox County Court of Common Pleas, which granted defendant-appellee Scott Roberts' Motion to Dismiss for Lack of Personal Jurisdiction.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Kauffman Racing is an Ohio Limited Liability Company engaged in the business of selling engine blocks and related high performance racing equipment. It maintains its sole business office and operations in Glenmont, Knox County, Ohio. Kauffman Racing specializes in the sale of after-market engine blocks for Pontiac competition automobiles. The company averages approximately $750,000 in annual gross sales.
 {¶ 3} On February 6, 2006, Kauffman Racing sold an MR-1 engine block and related equipment to a buyer, using the name "Central Virginia Machine", for the purchase price of $2,873.75. Kauffman Racing subsequently learned Roberts was the actual purchaser of the MR-1 engine block at issue herein. Roberts selected the engine block after viewing Kauffman Racing's Internet site. Approximately eight months after the purchase, in October, 2006, Roberts telephoned Kauffman Racing, complaining the engine block was defective. Roberts had not expressed to Kauffman Racing any dissatisfaction with the item prior to this time.
 {¶ 4} Although the engine blocks and racing products marketed by Kauffman Racing are sold "as is" due to the extreme demands placed on the equipment, Kauffman Racing chose to make an effort to verify Roberts' claim of manufacturing defects in the *Page 3 
engine block. Kauffman Racing proposed the engine block be shipped to Ohio, for inspection, and if the part was found defective as a result of Kauffman Racing's doing, the company would buy back the engine block at the original purchase price. Roberts accepted the terms and conditions of this arrangement. Kauffman Racing arranged for the engine block to be picked up in Virginia, and returned to its Ohio plant.
 {¶ 5} Upon inspection, Kauffman Racing found the engine block had been substantially modified from the original specifications in which it had been shipped to Central Virginia Machine, in February, 2006. Kauffman Racing contacted Roberts, inquiring as to whom had undertaken the modifications of the engine block. Roberts admitted Central Virginia Machine had worked on the part. Kauffman Racing advised Roberts it would not buy back the engine block as the defects of which he complained were the result of modifications made subsequent to the sale and delivery of the part, and not by the manufacturer of the block itself. Kauffman Racing shipped the engine block to Roberts in Virginia. Thereafter, from October 18, 2006, through November, 2006, Roberts posted a number of statements on the bulletin board pages of Internet sites dedicated to automobile racing equipment, performance, and related subjects.
 {¶ 6} As a result of these postings, Kauffman Racing filed a Complaint in the Knox County Court of Common Pleas, alleging Roberts had injured the company's reputation and business by posting false and malicious statements on the Internet. Kauffman Racing sought monetary damages from Roberts for defamation and intentional interference with contracts and business relationships. Kauffman Racing perfected service of process on Roberts pursuant to Civ. R. 4.3. In response, Roberts filed a motion to dismiss for lack of personal jurisdiction. Via Judgment Entry filed June *Page 4 
1, 2007, the trial court granted Roberts' motion to dismiss, and dismissed Kauffman Racing's Complaint.
 {¶ 7} It is from this judgment entry Kauffman Racing appeals, raising the following assignment of error:
 {¶ 8} "I. THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION TO DISMISS PLAINTIFF-APPELLANT'S COMPLAINT FOR LACK OF JURISDICTION OVER HIS PERSON."
 {¶ 9} We review a trial court's judgment granting a motion to dismiss for lack of personal jurisdiction de novo. Joffe v. Cable Tech,Inc., 163 Ohio App.3d 479, 2005-Ohio-4930, 839 N.E.2d 67, at ¶ 10. To defeat a non-resident defendant's motion to dismiss premised upon jurisdictional grounds, a plaintiff must make a prima facie demonstration the trial court has personal jurisdiction over the defendant. See Yauger v. Hamilton Sorter Co. (Oct. 18, 1993), Butler App. No. CA93-02-030; Giachetti v. Holmes (1984), 14 Ohio App.3d 306,307. A prima facie showing is made where the plaintiff produces sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction over the defendant. Id. at 307. In making this determination, a trial court must "view allegations in the pleadings and the documentary evidence in a light most favorable" to the plaintiff and resolve "all reasonable competing inferences" in favor of the plaintiff. Goldstein v. Christiansen, 70 Ohio St.3d 232, 236,1994-Ohio-229; Giachetti at 307.
 {¶ 10} In deciding whether Ohio has jurisdiction over non-resident defendants, a court must engage in a two-step analysis. U.S. SprintCommunications Co. Ltd. Partnership v. Mr. K's Foods, Inc. (1994),68 Ohio St.3d 181, 183, 624 N.E.2d 1048; *Page 5 Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990),53 Ohio St.3d 73, 75, 559 N.E.2d 477. The court must first determine whether Ohio's long-arm statute, R.C. 2307.382, and the applicable Rule of Civil Procedure, Civ. R. 4.3(A), confer jurisdiction. U.S. SprintCommunications at 184, 624 N.E.2d 1048; Kentucky Oaks Mall Co. at 75,559 N.E.2d 477. Second, the court must determine whether granting jurisdiction would deprive the non-resident of due process of law under the Fourteenth Amendment to the United States Constitution. Id.
 {¶ 11} The Ohio long-arm statute, section 2307.382 of the Ohio Revised Code, provides, in pertinent part:
 {¶ 12} "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
 {¶ 13} "* * *
 {¶ 14} "(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;"
 {¶ 15} Under the first prong of the U.S. Sprint test, we must decide whether Kauffman Racing has presented a prima facie case establishing the trial court has limited personal jurisdiction over Roberts under R.C. 2307.382. The evidence before the trial court shows, from a computer outside of Ohio, Roberts posted messages about Kauffman Racing on a number of websites.
 {¶ 16} On October 18, 2006, Roberts posted the following message on the forum page of the Performance Years website: *Page 6 
 {¶ 17} "Bought a MR-1 Block from Kauffman in march [sic] of this year * * * Now, I have and have had since the day the block was delivered, a USELESS BLOCK. I didn't say worthless! I plan to get a lot of mileage out of it[.] And when i'm [sic] done Steve Kauffman will be able to attest to its worth."
 {¶ 18} Later the same day, Roberts added:
 {¶ 19} "I did send it back. They still have it. Steve Kauffman admitted on the phone that he got similar numbers on the sonic test as i [sic] did but he won't take it back because I did some work to it and have had it to [sic] long. I guess it doesn't matter that the day I got it all of the defects exsisted [sic] and nothing I have done caused them. But don't worry about that. What I loose [sic] in dollars I will make up in entertainment at their expence [sic]."
 {¶ 20} The following day, October 19, 2006, Roberts wrote:
 {¶ 21} "You don't seem to understand. As far as Steve kauffman [sic] is concerned the issue is resolved. * * * Again, this is not to get a resolution. I have a much bigger and dastardly plan than that and this is the perfect place to start. * * *(LOL)[1] * * * Here is another good board to visit! * * * Just trying to help other potential victims." (Emoticons omitted).
 {¶ 22} On the EBay Automotive site, more of the same is found. We find Roberts' act of posting messages on various Internet sites was "committed with the purpose of injuring" Kauffman Racing, and such purpose is clearly seen in the content of Roberts' postings. As such, we find Ohio's long-arm statute and Civ. R. 4.3(A) confer jurisdiction on the trial court. *Page 7 
 {¶ 23} Although we find the trial court has limited personal jurisdiction over Roberts under Ohio's long-arm statute and Civ. R. 4.3(A), our inquiry is not finished. We also must consider whether the jurisdiction granted under the long-arm statute is consistent with "traditional notions of fair play and substantial justice."International Shoe Co. v. Washington (1945), 326 U.S. 310, 316,66 S.Ct. 154, 90 L.Ed. 95 (Quotation omitted).
 {¶ 24} The Due Process Clause protects an individual from being subject to the binding judgments of a forum in which he has not established any meaningful contacts, ties, or relations. Burger KingCorp. v. Rudzewicz (1985), 471 U.S. 462, 471-472, 105 S.Ct. 2174,85 L.Ed.2d 528, quoting Internatl. Shoe Co., supra. Due process is satisfied if a forum has either specific or general jurisdiction over a non-resident defendant. Helicopteros Nacionales de Colombia, S.A. v.Hall (1984), 466 U.S. 408, 414-415, 104 S.Ct. 1868, 80 L.Ed.2d 404, fns. 8 and 9. Specific jurisdiction turns upon the relationship between the defendant, forum, and litigation, and exists only when the litigation at hand arises out of or relates to a defendant's "minimum contacts" with the forum. Burger King at 472, 105 S.Ct. 2174, 85 L.Ed.2d 528. General jurisdiction, on the other hand, is based upon "continuous and systematic" contacts with the forum that are unrelated to the underlying litigation. Helicopteros at 415, 104 S.Ct. 1868, 80 L.Ed.2d 404, fn. 9.
 {¶ 25} In order for a trial court to assert limited personal jurisdiction over an out-of-state defendant, three criteria must be satisfied: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or the consequences caused by the defendant must *Page 8 
have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. South Mach. Co. v. Mohasco Indus.,Inc. (6th Cir. 1968), 401 F.2d 374, 381.
 {¶ 26} Regardless of the classification, jurisdiction is proper only when the party "`purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'." Burger King at 475, 105 S.Ct. 2174,85 L.Ed.2d 528, quoting Hanson v. Denckla (1958), 357 U.S. 235,78 S.Ct. 1228, 2 L.Ed.2d 1283. The "purposeful availment" requirement — the Constitutional touchstone of personal jurisdiction — ensures a party will only be haled into a jurisdiction where it has either deliberately engaged in significant activities or created continuing obligations between itself and residents of the state. Burger King,471 U.S. at 475-476, 105 S.Ct. 2174, 85 L.Ed.2d 528.
 {¶ 27} The development and advances in technology have required Federal and State Courts to tackle unique situations such as the one presented in the instant action. In Zippo Manufacturing Co. v. Zippo DotCom (1997), 952 F. Supp. 1119, the United States District Court, W.D. Pennsylvania, addressed the issue of personal jurisdiction over a non-resident defendant in the "doing business over the Internet" context, and remarked:
 {¶ 28} "In Hanson v. Denckla, the Supreme Court noted that `[a]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase.'Hanson v. Denckla, 357 U.S. 235, 250-51, 78 S.Ct. 1228, 1237-39,2 L.Ed.2d 1283 (1958). Twenty seven years later, the Court observed jurisdiction could not be avoided `merely because the defendant did notphysically enter *Page 9 
the forum state.' Burger King, 471 U.S. at 476, 105 S.Ct. at 2184. The Court observed that:
 {¶ 29} "`[I]t is an inescapable fact of modern commercial life that a substantial amount of commercial business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.'Id.
 {¶ 30} "Enter the Internet, a global `"super-network" of over 15,000 computer networks used by over 30 million individuals, corporations, organizations, and educational institutions worldwide.' PanavisionIntern., L.P. v. Toeppen, 938 F.Supp. 616 (C.D.Cal. 1996) (citingAmerican Civil Liberties Union v. Reno, 929 F.Supp. 824,830-48(E.D.Pa. 1996)). `In recent years, businesses have begun to use the Internet to provide information and products to consumers and other businesses.' Id. The Internet makes it possible to conduct business throughout the world entirely from a desktop. With this global revolution looming on the horizon, the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages. The cases are scant. Nevertheless, our review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. * * *
 {¶ 31} "Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Burger King, 471 U.S. at 475,105 S.Ct. at 2183-84. Different results should not be *Page 10 reached simply because business is conducted over the Internet ."Zippo, supra, at 1123-1124. (Emphasis added).
 {¶ 32} We recognize the instant action does not involve the same factual scenario as Zippo, supra, however, we find that decision instructive. In the decade plus which has passed since Zippo, supra, was decided, the Internet has evolved beyond what the average person could ever have imagined. The Internet knows no state boundaries. The Internet has also become accessible at virtually every coffee shop in the world. A non-resident defendant who avails himself of the expansive reach of the Internet should not be able to use his non-residency as a shield against defending tortious activity against a plaintiff harmed in a different state.
 {¶ 33} In his Brief to this Court, Roberts asserts, "There is no evidence that he targeted Ohio residents or even targeted a business whose customers were limited to Ohio." Roberts adds, he did not know "Ohio residents would access the site." We find Roberts' argument unconvincing. The alleged defamation concerned a business located in Ohio and the business practices of an Ohio resident. Roberts was aware of these facts when he posted his messages. Although Kauffman Racing conducted business over the Internet, which is accessible worldwide, the defamation impugned the propriety of Kauffman Racing's business dealings, which are centered in Ohio. The brunt of the harm, in terms of the injury to Kauffman Racing's professional reputation and business, was suffered in Ohio. In sum, Ohio is the focal point both of the defamation and of the harm suffered. Jurisdiction over Roberts is, therefore, proper in Ohio based upon the "effects" of his Virginia conduct in Ohio. See, Calder v. Jones *Page 11 
(1984), 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804; World-WideVolkswagen, supra at 297-298.
 {¶ 34} Today, thanks to the accessibility of the Internet, the barriers to generating publicity are slight, and the ethical standards regarding the acceptability of certain discourse have been lowered. As the ability to do harm has grown, so must the law's ability to protect the innocent.
 {¶ 35} Kauffman Racing's sole assignment of error is sustained.
 {¶ 36} The matter is reversed and remanded to the trial court for further proceedings consistent with this opinion and the law.
Hoffman, P.J. Farmer, J. concurs, Delaney, J. dissents
[1] "LOL" is on-line jargon for "Laugh Out Loud". *Page 12