KAUFFMAN RACING EQUIPMENT, L.L.C., APPELLEE, *v.* ROBERTS, APPELLANT.

[Cite as *Kauffman Racing Equip., L.L.C. v. Roberts*,

126 Ohio St.3d 81, 2010-Ohio-2551.]

*Civil procedure — Long-arm jurisdiction — Alleged defamation via Internet — Right to due process not violated here — Judgment affirmed.*

(No. 2008-1038 — Submitted April 22, 2009 — Decided June 10, 2010.)

APPEAL from the Court of Appeals for Knox County, No. 07-CA-14,

2008-Ohio-1922.

_____

**PFEIFER, J.**

**{¶ 1}** In this case, we address whether an Ohio court can properly assert personal jurisdiction over a nonresident defendant when jurisdiction is predicated on that defendant's publication of allegedly defamatory statements on the Internet. For the reasons that follow, we hold that the trial court erred when it declined to assert personal jurisdiction over the nonresident defendant in this case.

**Factual and Procedural Background**

**{¶ 2}** Appellee, Kauffman Racing Equipment, L.L.C. ("KRE"), is an Ohio limited liability company that constructs engine blocks and related high-performance automotive equipment for public sale. Although its business dealings are nationwide, KRE maintains its sole business operations and office in Glenmont, Ohio.

**{¶ 3}** Appellant, Scott Roberts, is a 30-year resident of Virginia. Roberts has never physically entered Ohio. On February 6, 2006, using the name "Central Virginia Machine," Roberts purchased from KRE an MR-1 Pontiac engine block after viewing the block on KRE's website.

**{¶ 4}** In October 2006, eight months after purchasing the engine block, Roberts contacted KRE by telephone, claiming that the block was defective. Although its products are sold "as is," KRE offered to retrieve the block from Virginia and bring it back to KRE's Ohio office for inspection. KRE and Roberts agreed that if KRE could verify that the product was defective, it would buy back the engine block at the price paid by Roberts.

**{¶ 5}** KRE's inspection revealed that after KRE had delivered the block to Roberts, substantial modifications had been made from the block's original specifications. When KRE contacted Roberts and presented this information, Roberts admitted that Central Virginia Machine had altered the block. Because KRE believed that Roberts's modifications were the cause of the defects, it declined to buy back the block and instead shipped it back to Roberts in Virginia.

**{¶ 6}** Roberts was dissatisfied. As a result, from October 18, 2006, through November 2006, Roberts posted numerous rancorous criticisms of KRE on various websites devoted to automobile racing equipment and related subjects. His commentary appeared on the public-forum section of the websites PerformanceYears.com and PontiacStreetPerformance.com and in an item description on the Internet auction website, eBay Motors.

**{¶ 7}** Roberts sought to affect KRE's reputation. In an October 18, 2006 post on the PerformanceYears.com website, Roberts wrote:

**{¶ 8}** "Bought a MR-1 Block from Kauffman in march [sic] of this year * * *

**{¶ 9}** "Now, I have and have had since the day the block was delivered, a USELESS BLOCK. I didn't say worthless! I plan to get a lot of mileage out of it[.] And when i'm [sic] done Steve Kauffman will be able to attest to its worth." (Capitalization sic.)

**{¶ 10}** Later the same day, Roberts added:

2

**{¶ 11}** "I did send it back.  They still have it.  Steve Kauffman admitted on the phone that he got similar numbers on the sonic test as i [sic] did but he won't take it back because I did some work to it and have had it to [sic] long.  I guess it doesn't matter that the day I got it all of the **defects** exsisted [sic] and nothing I have done caused them.  But don't worry about that.  What I loose [sic] in dollars I will make up in entertainment at their expence [sic]."  (Boldface sic.)

**{¶ 12}** The following day, October 19, 2006, Roberts wrote:

**{¶ 13}** "You don't seem to understand.  As far as Steve kauffinan [sic] is concerned the issue is resolved. * * * Again, this is not to get a resolution.  I have a much bigger and dastardly plan than that and this is the perfect place to start. * * * (LOL) * * *  Here is another good board to visit! * * * Just trying to help other potential victims."  (Emoticons omitted.)

**{¶ 14}** On the eBay Motors auction site, Roberts ostensibly listed the block for sale.  In the item description, he wrote:

**{¶ 15}** "This is a Kauffman MR-1 Block.  It has some real issues. * * * Steve Kaufmann [sic] says it's the best aftermarket block out there for a Pontiac, but I now know better.  * * * Basically this block is junk and I have bought an IA-II block to replace it.  It has never been assembled. * * *  Also the service you would get from Steve Kauffman of K&M performance is less than honorable.  I brought the issues to his attention and he basically gave me the middle finger salute.  He would not take it back because I had it for more than 90 days.  I will never do business with Kauffman or KRE again.  Not just because of the block issues but mostly the lack of service issues.  E-mail me and I will tell you the whole story.  However the block (junk) is for sale 'as is'!"

**{¶ 16}** Roberts explained his eBay Motors auction in another post on PerformanceYears.com:

**{¶ 17}** "As far as the block on e-bay.  Thats [sic] nothing more than getting the FACTS out to more people.  Do you believe anyone will read that add

[sic] and buy it? I can assure you this block issue is faaaaar from over. Do you think I would spread this around like I have and plan to if I thought I couldn't back EVERYTHING up?

{¶ 18} "Again, I am not here to stir any pots. I posted facts I can back up 100%. I can't control what others say or do!" (Capitalization sic.)

{¶ 19} Steve Kauffman of KRE personally received separate inquiries regarding Roberts's Internet postings from at least five Ohio residents.

{¶ 20} Consequently, KRE filed a complaint in Knox County Court of Common Pleas seeking money damages from Roberts for defamation and intentional interference with contracts and business relationships. The trial court granted Roberts's motion to dismiss for lack of personal jurisdiction on June 1, 2007, and dismissed KRE's complaint.

{¶ 21} KRE appealed. The Fifth District Court of Appeals reversed the trial court's judgment. *Kauffman Racing Equip., L.L.C. v. Roberts*, Knox App. No. 07-CA-14, 2008-Ohio-1922, ¶ 36. The court of appeals held that the Ohio long-arm statute and Civ.R. 4.3(A) confer jurisdiction on the trial court and that the exercise of personal jurisdiction over Roberts did not deprive him of his right to due process of law under the Fourteenth Amendment to the United States Constitution. Id. at ¶ 23.

{¶ 22} The cause is before this court upon the acceptance of a discretionary appeal. *Kauffman Racing Equip., L.L.C. v. Roberts,* 119 Ohio St.3d 1471, 2008-Ohio-4911, 894 N.E.2d 331.

**Law and Analysis**

{¶ 23} This case emanates from comments Roberts allegedly made on the Internet. Does this fact affect the way this court should approach the jurisdictional question? In this case, we think not.

{¶ 24} Over 50 years ago, the United States Supreme Court acknowledged that jurisdictional jurisprudence must evolve alongside technological

4

developments: "As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase." *Hanson v. Denckla* (1958), 357 U.S. 235, 250-251, 78 S.Ct. 1228, 2 L.Ed.2d 1283. Along comes the Internet, and with it, the opportunity for civil disputes has greatly expanded. "As [Internet] availability expands, the opportunity for civil disputes could expand proportionately, meaning that the American court system will be called upon to adjudicate an even greater number of cases. Since these cases will be predicated on Internet activity, the parties often will be from different parts of the country, or even from different countries. As a threshold issue, courts must decide whether such cases are properly before them." Scott T. Jansen, Oh, What a Tangled Web * * * The Continuing Evolution of Personal Jurisdiction Derived from Internet-Based Contacts (2006), 71 Mo.L.Rev. 177, 180.

{¶ 25} The rise in Internet-related disputes does not mean courts should ignore traditional jurisdiction principles. " '[T]he Internet does not pose unique jurisdictional challenges. People have been inflicting injury on each other from afar for a long time. Although the Internet may have increased the quantity of these occurrences, it has not created problems that are qualitatively more difficult.' " Jansen, 71 Mo.L.Rev. at 182, 183, quoting Allen R. Stein, Symposium, Personal Jurisdiction and the Internet: Seeing Due Process Through the Lens of Regulatory Precision (2004), 98 Nw.U.L.Rev. 411.

{¶ 26} In some cases involving the Internet, the *Zippo* test, developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* (W.D.Pa.1997), 952 F.Supp. 1119, 1124, has been employed to determine whether Internet activity between the defendant and the forum state establishes jurisdiction. The court established a "sliding scale" approach to Internet-based jurisdiction whereby the level of interactivity of the website is examined to determine whether the exercise of personal jurisdiction is proper. At one end of the scale are "situations where a defendant clearly does

business over the Internet." Id. "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.* (C.A.6, 2002), 282 F.3d 883, 890. At the other end of the *Zippo* scale are informational websites. *Zippo*, 952 F.Supp.2d at 1124. But as Roberts points out in his brief, "[t]he *Zippo* model was developed in a commercial or business context and is factually distinct from this case." When the Internet activity in question "is non-commercial in nature, the *Zippo* analysis * * * offers little to supplement the traditional framework for considering questions of personal jurisdiction." *Oasis Corp. v. Judd* (S.D.Ohio 2001), 132 F. Supp.2d 612, 622, fn. 9, citing *Mink v. AAAA Dev. L.L.C.*, (C.A.5, 1999), 190 F.3d 333, 336. We continue, then, with a traditional jurisdictional analysis.

{¶ 27} Personal jurisdiction is a question of law that appellate courts review de novo. In this case, upon Roberts's motion to dismiss, it became KRE's burden to show that the trial court had personal jurisdiction over Roberts; because the trial court decided Roberts's Civ.R. 12(B)(2) motion upon written submissions and without an evidentiary hearing, KRE had to make only a prima facie showing of jurisdiction. *Fallang v. Hickey* (1988), 40 Ohio St.3d 106, 107, 532 N.E.2d 117. In making its determination, the court must "view allegations in the pleadings and the documentary evidence in a light most favorable" to the plaintiff and resolving all reasonable competing inferences in favor of the plaintiff. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541.

{¶ 28} Determining whether an Ohio trial court has personal jurisdiction over a nonresident defendant involves a two-step analysis: (1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's*

*Foods, Inc.* (1994), 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048. We address those two factors in turn.

{¶ 29} Ohio's long-arm statute, R.C. 2307.382, enumerates specific acts that give rise to personal jurisdiction and provides:

{¶ 30} "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

{¶ 31} "* * *

{¶ 32} "(3) Causing tortious injury by an act or omission in this state;

{¶ 33} " * * *

{¶ 34} "(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state."

{¶ 35} Civ.R. 4.3 allows service of process on nonresidents in certain circumstances and mirrors the long-arm statute:

{¶ 36} "(A) Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. 'Person' includes an individual * * * who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

{¶ 37} " * * *

{¶ 38} "(3) Causing tortious injury by an act or omission in this state, including, but not limited to, actions arising out of the ownership, operation, or use of a motor vehicle or aircraft in this state;

{¶ 39} " * * *

{¶ 40} "(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person

to be served might reasonably have expected that some person would be injured by the act in this state."

{¶ 41} Roberts contends that Ohio's long-arm statute does not confer personal jurisdiction because he did not direct the alleged tortious statements to Ohio or publish them here. Despite the fact that Roberts's publication of his comments did not emanate from Ohio, those comments were received in Ohio. KRE submitted evidence that at least five Ohio residents had seen the comments posted by Roberts. In *Fallang*, 40 Ohio St.3d 106, 532 N.E.2d 117, paragraph one of the syllabus, this court held, "Civ.R. 4.3(A)(3) authorizes assertion of personal jurisdiction over a nonresident defendant in a defamation action when publication of the offending communication occurs in Ohio." In *Fallang*, the defendant had written an allegedly defamatory letter and had sent it to a person in Ohio. "The tort of libel occurs in the locale where the offending material is circulated (published) by the defendant to a third party. *Keeton v. Hustler Magazine, Inc*. (1984), 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790. In the instant case, [the defamatory] letter was published in Ohio by virtue of its receipt through the mail. Thus, under the principle announced in *Keeton*, supra, the tort was committed in Ohio." *Fallang*, 40 Ohio St.3d at 107, 532 N.E.2d 117.

{¶ 42} Roberts posted his allegedly defamatory statements on the Internet, ostensibly for the entire world to see. How much of the world saw the comments is unknown; but we do know that at least five Ohioans saw Roberts's statements. The comments were thus published in Ohio. Because Roberts's allegedly defamatory statements were published in Ohio, his alleged tort was committed in Ohio, and he falls within the grasp of R.C. 2307.382(A)(3) and Civ.R. 4.3(A)(3).

{¶ 43} But even if Roberts did not publish or circulate his statements within the territorial boundaries of Ohio, he is not shielded from the reach of Ohio's long arm. "R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9) permit a court to exercise personal jurisdiction over a nonresident defendant and provide for

service of process to effectuate that jurisdiction if the cause of action arises from a tortious act committed outside Ohio with the purpose of injuring persons, when the nonresident defendant might reasonably have expected that some person would be injured thereby in Ohio." *Clark v. Connor* (1998), 82 Ohio St.3d 309, 313, 695 N.E.2d 751.

{¶ 44} Thus, even if we assume that Roberts's alleged tortious conduct did not take place within the territorial boundaries of Ohio, he nonetheless "might reasonably have expected that [KRE] would be injured thereby in this state." R.C. 2307.382(A)(6). When defamatory statements regarding an Ohio plaintiff are made outside the state yet with the purpose of causing injury to the Ohio resident and there is a reasonable expectation that the purposefully inflicted injury will occur in Ohio, the requirements of R.C. 2307.382(A)(6) are satisfied. It is clear from the postings that Roberts's statements were made with the purpose of injuring KRE. Therefore, the long-arm statute permits the exercise of personal jurisdiction over Roberts in Ohio.

{¶ 45} Ohio's long-arm statute is not coterminous with due process. *Goldstein*, 70 Ohio St.3d at 238, 638 N.E.2d 541, fn. 1. Therefore, although Ohio's long-arm statute confers personal jurisdiction over Roberts, an Ohio court cannot exercise personal jurisdiction over Roberts if doing so would violate his constitutional right to due process. The United States Supreme Court noted in *Internatl. Shoe Co. v. Washington* that due process is satisfied if the defendant has "minimum contacts" with the forum state such that the maintenance of the suit does not offend " 'traditional notions of fair play and substantial justice.' " (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278. The minimum-contacts requirement is met when a nonresident defendant "purposefully avails [himself] of the privilege of conducting activities within the forum State." *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

**{¶ 46}** Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. *Conti v. Pneumatic Prods. Corp.* (C.A.6, 1992), 977 F.2d 978, 981. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.' " *Bird v. Parsons* (C.A.6, 2002), 289 F.3d 865, 873, quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.* (C.A.6, 1989)*,* 882 F.2d 1087, 1089. KRE does not allege that Roberts has continuous and systematic contacts in Ohio such that he would be amenable to jurisdiction for claims arising outside of Ohio.

**{¶ 47}** Instead, KRE asserts that Ohio has specific jurisdiction over Roberts. Specific jurisdiction applies when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984), 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404, fn. 8. KRE alleges that its cause of action is related to or arises out of the defendant's contact with Ohio.

**{¶ 48}** In *Bird*, the court held that specific jurisdiction "is permissible only if [a defendant's] contacts with Ohio satisfy the three-part test that this court established in *Southern Machine Company v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir.1968):

**{¶ 49}** " 'First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.' " *Bird*, 289 F.3d at 874.

{¶ 50} In this case, we, too, employ the three-part test from *S. Machine*, 401 F.2d at 381, in determining whether specific jurisdiction here is consistent with due process.

{¶ 51} The first *S. Machine* factor is whether the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state. "Purposeful availment" is present when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (Emphasis sic.) *Burger King Corp. v. Rudzewicz* (1985)*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *McGee v. Internatl. Life Ins. Co.* (1957), 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223. The defendant's conduct and connection with the forum must be such that he " 'should reasonably anticipate being haled into court there.' " Id. at 474, quoting *World-Wide Volkswagen Corp. v. Woodson*, (1980) 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," id. at 475, citing *Keeton*, 465 U.S. at 774, 104 S.Ct. 1473, 79 L.Ed.2d 790, or of the " 'unilateral activity of another party or third person,' " id., quoting *Helicopteros Nacionales*, 466 U.S. at 417, 104 S.Ct. 1868, 80 L.Ed.2d 404. In certain circumstances, the "plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance the defendant's contacts with the forum. Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises." *Keeton*, 465 U.S. 770 at 780, 104 S.Ct. 1473, 79 L.Ed.2d 790.

{¶ 52} This is a defamation case. The United States Supreme Court addressed purposeful availment in regard to jurisdiction in defamation cases in *Calder v. Jones* (1984), 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804. In *Calder*, a California resident and actress, Shirley Jones, brought a libel action in

California against Florida-resident employees of the National Enquirer, a Florida corporation. Id. at 785. The defendants were the writer and editor of an article that was written in Florida and appeared in the National Enquirer, alleging that Jones drank so heavily that she was unable to fulfill her professional obligations. Id. at 785-786, 788-789, fn. 9. The court held that jurisdiction was proper in California because "[t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of [Jones's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California." Id at 788-789.

{¶ 53} The defendants argued that California lacked personal jurisdiction over them because it was their publisher that was responsible for the circulation of the article in California, not they. The defendants analogized themselves to welders employed in Florida who worked on a boiler that subsequently exploded in California. They argued that although jurisdiction would be proper over the manufacturer, it should not be applied to welders, who have no control over and derive no direct benefit from their employer's sales in another state.

{¶ 54} The court exploded the defendants' boiler analogy, focusing on the targeted nature of their activity:

{¶ 55} "Whatever the status of their hypothetical welder, petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works

12

and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d 490; *Kulko v. Superior Court*, 436 U.S. 84, 97-98, 98 S.Ct. 1690, 1699-1700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder,* 465 U.S. at 789-790, 104 S.Ct. 1482, 79 L.Ed.2d 804.

**{¶ 56}** To rephrase the court's conclusion in *Calder* in a question, should a company injured in Ohio need to go to Virginia to seek redress from a person who, though remaining in Virginia, knowingly caused injury in Ohio? Like the defendants in *Calder*, Roberts is not alleged to have engaged in untargeted negligence. Roberts's Internet commentary reveals a blatant intent to harm KRE's reputation. Roberts knew that KRE was an Ohio company. Roberts impugned the activities that KRE undertakes in Ohio. Roberts hoped that his commentary would have a devastating effect on KRE and that if there were fallout from his comments, the brunt of the harm would be suffered in Ohio.

**{¶ 57}** The Sixth Circuit Court of Appeals applied the *Calder* "effects" test narrowly in *Reynolds v. Internatl. Amateur Athletic Fedn.* (1994), 23 F.3d 1110. In that case, Butch Reynolds, an Olympic gold-medal-winning track star from Ohio, brought a defamation claim against the International Amateur Athletic Federation ("IAAF") for its publication of a press release announcing that following a Monte Carlo track meet, Reynolds had tested positive for banned substances. Reynolds alleged personal jurisdiction against the nonresident defendant, IAAF, because its defamatory acts had brought injury to Reynolds in Ohio.

**{¶ 58}** The court held:

**{¶ 59}** "We find *Calder* distinguishable for several reasons. First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the 'focal point' of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction. *World-Wide Volkswagen Corp.*, 444 U.S. at 295, 100 S.Ct. at 566[, 62 L.Ed.2d 490]. Finally, although Reynolds lost Ohio corporate-endorsement contracts and appearance fees in Ohio, there is no evidence that the IAAF knew of the contracts or of their Ohio origin. *Calder* is a much more compelling case for finding personal jurisdiction." *Reynolds*, 23 F.3d at 1120.

**{¶ 60}** The within case is much closer to *Calder* than it is to *Reynolds*. The distinguishing aspects in *Reynolds* are not at play here. Unlike the IAAF's statements about Reynolds's Monaco drug test, Roberts's statements concerned KRE's *Ohio* activities – the manufacture and postsale inspection of the engine block. Unlike Reynolds, who ran races throughout the world, KRE's reputation is centered in Ohio, where it performs all its work. Also, Roberts's Internet postings were published to Ohio residents by Roberts, not by third parties. In sum, the facts of this case square with *Calder* rather than *Reynolds*.

**{¶ 61}** We note that neither *Calder* nor *Reynolds* involved Internet communication of the allegedly defamatory material. Two cases from the Sixth Circuit do involve defamation cases arising from Internet activity; in both cases, courts attempt to determine whether the case is closer to *Calder* or to *Reynolds*.

**{¶ 62}** In *Cadle Co. v. Schlichtmann* (C.A.6, 2005), 123 Fed.Appx. 675, Schlichtmann, of Massachusetts, created a website to reveal what he believed to be the unlawful activities of Cadle, an Ohio-based debt collector, in Massachusetts. Cadle filed suit in Ohio for defamation. The court, while proclaiming that Schlichtmann's operation of a website would alone be insufficient to establish jurisdiction, did acknowledge that Schlichtmann's *statements* on the website may be sufficient to justify jurisdiction. Id. at 678-679. The court, in determining whether the defendant's Internet statements gave rise to the exercise of personal jurisdiction, then looked to *Calder* and *Reynolds* and distinguished the two cases. Finding the facts more like those in *Reynolds*, the court declined to assert personal jurisdiction because the alleged defamatory statements were not related to any activities Cadle undertook in Ohio. Id. at 680. In contrast, in this case, Roberts's posts were premised solely on the activities of KRE in Ohio.

**{¶ 63}** In *Oasis Corp.*, 132 F.Supp.2d 612, Oklahoma residents had launched a "gripe site" concerning the products of an Ohio corporation. Id. at 614. The Oklahoma residents had not purchased any item from Oasis, but were upset that an Oasis water cooler had caused a fire in a building the defendants were renting. Id. The district court declined to exercise personal jurisdiction because there was no evidence to suggest that the defendants' communications were received by anyone in Ohio other than the plaintiff. Id. at 621. Further, the court found more of a tie to *Reynolds* than to *Calder*:

**{¶ 64}** "The facts of this case much more closely resemble *Reynolds* than *Calder*. First, Defendants claim on their site that a defective Oasis water cooler started a fire in Oklahoma, not Ohio. Second, Oasis is an international company whose reputation is not centered in Ohio. Third, Defendants' site does not specifically target an Ohio audience. As in *Reynolds*, '[t]he fact that [Defendants] could foresee that [their proclamations would be viewed] and have an effect in

Ohio is not, in itself, enough to create personal jurisdiction.' " Id. at 624, quoting *Reynolds*, 23 F.3d at 1120.

{¶ 65} In contrast to the plaintiff in *Oasis Corp.*, Kauffman has alleged – and produced at least some evidence – that the alleged defamatory statements were communicated to Ohio residents other than Kauffman. Kauffman received inquiries from at least five Ohio residents who read the Roberts postings. Moreover, KRE is an Ohio-based company whose reputation is centered in Ohio and that *had* engaged in commercial activity with Roberts before the controversy.

{¶ 66} The *Calder* effects test is not beyond reproach. It has been called "the source of considerable uncertainty because Internet-based activity can ordinarily be said to cause effects in most jurisdictions." Michael A. Geist, Is There a There? Toward Greater Certainty for Internet Jurisdiction (2001), 16 Berkeley Tech.L.J. 1345, 1381. We find this criticism to be invalid. The effects analysis necessitates conduct "calculated to cause injury" in a "focal point" where the "brunt" of the injury is experienced. *Calder*, 465 U.S. at 789-791, 104 S.Ct. 1482, 79 L.Ed.2d 804. "While the effects of Internet conduct may be felt in many [forums], the intent requirement allows a court to find a particular focal point." Jansen, 71 Mo.L.Rev. at 192.

{¶ 67} Roberts argues that mere foreseeability by a nonresident defendant of the effects in the forum state is insufficient to justify the exercise of personal jurisdiction. Roberts's reliance on this conclusion is inapposite because the effects of his conduct went well beyond foreseeability: Roberts *intended* the effects of his conduct to be felt in Ohio. His statements were communicated with the very purpose of having their consequences felt by KRE in Ohio. The contention that his statements were not made with the purpose of injuring some person in Ohio is unavailing. The postings themselves indicate his purpose of injuring Kauffman. For example, on his October 18, 2006, posting, Roberts stated: "What I loose [sic] in dollars I will make up in entertainment at their

expence [sic]." On October 19, 2006, he wrote: "Again, this is not to get a resolution. I have a much bigger and dastardly plan than that and this is a good place to start." Many of the postings name Kauffman directly and specifically mention Ohio.

{¶ 68} Here, Roberts not only knew that Ohio resident KRE could be the victim, he intended that it be the victim. The allegedly defamatory communications concerned KRE's activities in Ohio. We are not dealing with a situation in which jurisdiction is premised on a single, isolated transaction. The posts detailed the transactions between Roberts and KRE. Moreover, the purchase of the engine block and subsequent transfers from Virginia to Ohio and back again served as the foundation from which this dispute arose. Roberts's allegedly defamatory posts were predicated on his course of dealing with an Ohio resident corporation. At least five Ohio residents other than Kauffman read these postings. Finally, although KRE does business nationwide, its business reputation is centered in Ohio, because Ohio is the location of its sole base of operations. Roberts knew, and in fact intended, that the brunt of the harm caused be felt by KRE in Ohio. Thus, the focal point of the damage was Ohio, and Roberts's actions therefore fulfill the requirement of causing a consequence in Ohio.

{¶ 69} Here, KRE has made a prima facie showing that Roberts purposefully availed himself of Ohio law. When viewed in a light most favorable to KRE, the evidence shows that Roberts intentionally and tortiously sought to harm KRE's reputation and negatively affect its contracts and business relationships. Therefore, KRE meets the first of the *S. Machine* factors.

{¶ 70} Having recognized Roberts's contacts in Ohio, we now address the second *S. Machine* prong, which involves an analysis of whether KRE's claims arise from those contacts. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson* (C.A.6, 1996),

89 F.3d 1257, 1267. This "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state activities.' " (Emphasis added in *Third Natl.*) *Third Natl. Bank,* 882 F.2d at 1091, quoting *S. Machine Co.*, 401 F.2d at 384, fn. 27. Further, a "lenient standard * * * applies when evaluating the 'arising from' criterion." *Bird*, 289 F.3d at 875. Under this standard, KRE has made a prima facie showing that the cause of action arose from Roberts's contacts with Ohio. Not only does the cause of action arise from defamatory statements, those statements themselves are predicated on the business dealings between Roberts and KRE. The catalyst for Roberts's actions was his Ohio contacts. In fact, but for his contacts with Ohio, Roberts's allegedly defamatory statements would not have been posted.

{¶ 71} Under the third and final prong of the *S. Machine* test, the acts of the nonresident defendant or consequences caused by the defendant must have a substantial connection with the forum state to make exercise of jurisdiction over the defendant reasonable. When "the first two elements of a prima facie case [are satisfied] then an inference arises that this third factor is also present." *CompuServe, Inc.*, 89 F.3d at 1268, citing *Am. Greetings Corp. v. Cohn* (C.A.6, 1988), 839 F.2d 1164, 1170. " '[O]nly the unusual case will not meet this third criterion.' " *Am. Greetings*, 839 F.2d at 1170, quoting *First Natl. Bank of Louisville v. J.W. Brewer Tire Co.* (C.A.6, 1982), 680 F.2d 1123, 1126.

{¶ 72} A number of factors are relevant to the reasonableness inquiry. A court first must consider Ohio's interest in the controversy. *In-Flight Devices Corp. v. Van Dusen Air, Inc.* (C.A.6, 1972), 466 F.2d 220, 232. "[I]t is beyond dispute that [a forum state] has a significant interest in redressing injuries that actually occur within the State." *Keeton*, 465 U.S at 776, 104 S.Ct. 1473, 79 L.Ed.2d 790. "Ohio has a legitimate interest in protecting the business interests of

18

its citizens * * *." *Bird*, 289 F.3d at 875. "The United States Supreme Court has indicated that a high degree of unfairness is required to erect a constitutional barrier against jurisdiction. * * * This is especially true in a case (such as the one herein) in which the defendant has intentionally directed his activity at forum residents * * *, and the 'effects' of the activity occur in the forum state. *Calder v. Jones*, [465 U.S.] at 788-789 [104 S.Ct. at 1486-87, 79 L.Ed.2d 804]." *Fallang*, 40 Ohio St.3d at 108, 532 N.E.2d 117. KRE and Ohio clearly have an interest in KRE's obtaining the relief sought, and Ohio is the appropriate forum.

{¶ 73} We conclude that the exercise of jurisdiction over Roberts in this case is reasonable, satisfying the third part of the *S. Machine* test.

### Conclusion

{¶ 74} Viewing the evidence in a light most favorable to KRE, we conclude that Ohio's long-arm statute and the applicable rule of civil procedure confer jurisdiction over Roberts and that an exercise of jurisdiction of the trial court would not deprive this nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution. KRE has made a sufficient showing that Roberts caused tortious injury in this state by acts committed outside of Ohio with the purpose of injuring KRE. His communications specifically targeted a known Ohio resident, and the cause of action arises from the substantial connection Roberts made with Ohio through his course of dealing with KRE. We decline to allow a nonresident defendant to take advantage of the conveniences that modern technology affords and simultaneously be shielded from the consequences of his intentionally tortious conduct. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

O'DONNELL and LANZINGER, JJ., dissent.

BROWN, C.J., not participating.

_____

**O'DONNELL, J., dissenting.**

{¶ 75} Respectfully, I dissent. Today, the majority has extended the personal jurisdiction of Ohio courts to cover any individual in any state who purchases a product from an Ohio company and posts a criticism of it on the Internet with the intent to damage the seller. This holding changes long-arm jurisdiction dramatically. In my view, because minimum contacts with Ohio are not present in all such circumstances, the majority's holding does not withstand due process scrutiny.

{¶ 76} "[T]he constitutional touchstone [of long-arm jurisdiction] remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528. While the majority focuses on the fact that Roberts could foresee and even intended to cause injury to Kauffman Racing Equipment, L.L.C. ("KRE"), an Ohio company, the United States Supreme Court "has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." Id., quoting *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490. Rather, personal jurisdiction is proper if the defendant's conduct and connections with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (Emphasis sic.) Id. at 475, quoting *McGee v. Internatl. Life Ins. Co.* (1957), 355 U.S. 220, 223, 78 S. Ct. 199, 2 L.Ed.2d 223. The defendant's actions must have created that connection to such a degree that he " 'should reasonably anticipate being haled into court there.' " Id., quoting *World-Wide Volkswagen* at 297. When the defendant does not have an ongoing relationship with the forum state, a defendant must *deliberately* engage in significant activities within that state and " 'purposefully direct[]' his activities at residents of the forum" to satisfy this standard. Id. at 472, quoting

*Keeton v. Hustler Magazine, Inc.* (1984), 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.E.2d 790; see also *Anilas, Inc. v. Kern* (1987), 31 Ohio St.3d 163, 164, 31 OBR 366, 509 N.E.2d 1267 ("the focus of analysis ought to be whether one *purposely* established contacts with the forum state," [emphasis sic]).

{¶ 77} Relying primarily on *Calder v. Jones* (1984), 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804, the majority concludes that Roberts exercised minimum contacts with Ohio sufficient to satisfy due process because he posted defamatory comments relating to a consumer transaction with KRE on three websites, intending them to have effects felt in Ohio, and the evidence indicates that five identified Ohio residents read them. However, *Calder* does not conclusively confer jurisdiction in the forum state simply because the defendant's intended effects of the communication are felt in that state. Rather, the court in *Calder* considered the location of the injury and the *pervasive nature of the contact* when assessing whether the defendants had the minimum contacts with the forum state. The court stressed that the newspaper in which the article appeared, the National Enquirer, had its largest circulation, almost twice that in any other state, in California, where the plaintiff resided. It was that detail *coupled with* the fact that the person about whom the article was written lived and would suffer injury in California that rendered California the focal point of the publication. Based upon those facts, the court identified minimum contacts sufficient to demonstrate that the defendants could "reasonably anticipate being haled into court there." Id. at 790, quoting *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490.

{¶ 78} But the facts of this case are easily distinguishable from those in *Calder*. Here, Roberts posted his comments on three general auto-racing websites and an auction site, none of which have any specific connection to Ohio or are more likely to be viewed by a resident of Ohio than by a resident of any other state. In fact, KRE could identify only five Ohio residents it believes actually

viewed Roberts's comments.  In *Calder*, on the other hand, the National Enquirer sold approximately 600,000 copies of the offending article in the forum state. *Calder*, 465 U.S. at 785, 104 S.Ct. 1482, 79 L.Ed.2d 804.  The reach of Roberts's comments to Ohio residents is not at all comparable to the reach of the National Enquirer's circulation to California residents.

**{¶ 79}** By merely posting to general websites, Roberts neither *deliberately* engaged in significant activities within Ohio nor *purposefully directed* his activities at an Ohio resident sufficient to establish minimum contacts and satisfy due process — regardless of his intent.[1]  See, e.g., *Oasis Corp. v. Judd* (S.D.Ohio 2001), 132 F. Supp.2d 612, 623 (declining to find jurisdiction because "[t]he computers hosting Defendants' [web]site are not located in Ohio, there has been no meaningful interactivity between the site and a significant number of Ohioans, and the site is not directed toward an Ohio audience * * *"); see also *Young v. New Haven Advocate* (C.A.4, 2002), 315 F.3d 256, 263  ("the fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience").  While it is evident from Roberts's Internet posts that he sought to discourage others from purchasing KRE's products, any individual who posts a negative review of a product or service in a public forum arguably seeks the same objective.  Subjecting all individuals to suit in Ohio who post Internet reviews — no matter how scathing — of purchases

---

1. The majority does not find sufficient contacts to confer jurisdiction based solely on the parties' underlying transaction, nor should it. See *Clark v. Connor* (1998), 82 Ohio St.3d 309, 314, 695 N.E.2d 751, 756, quoting *Burger King*, 471 U.S. at 479, 105 S. Ct. 2174, 85 L.E.2d 528 (finding that an in-state plaintiff's contract with an out-of-state defendant, standing alone, does not establish sufficient minimum contacts and that " 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' " must be considered).  Here, while the transaction involved the purchase and return of a product, there is no evidence that the parties expressly or implicitly contemplated future consequences or a longer relationship.

made from Ohio companies does not comport with the due process notions of "fair play and substantial justice." *Internatl. Shoe Co. v. Washington, Office of Unemp. & Placement* (1945), 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95.

{¶ 80} The foreseeability of causing injury to an Ohio company, whether the injury is intended or not, without directing activity at forum residents, is not sufficient to establish minimum contacts. See *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174, 85 L.Ed.2d 528; see also *New Haven Advocate*, 315 F.3d at 263 (narrowly construing *Calder* and holding that "[t]he newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers"). Notwithstanding this traditional jurisdictional principle, the majority has provided an avenue for any affected Ohioan to sue the originator of any negative Internet post in an Ohio court when the product has been purchased in Ohio and the negative post is read by an Ohio resident. But this standard falls far short of due process.

{¶ 81} Since this case is limited to the jurisdictional aspects of the litigation, the parties have not briefed, nor has the court addressed, the First Amendment rights of those who post comments on the Internet. The Supreme Court of the United States in *Calder* "reject[ed] the suggestion that First Amendment concerns enter into the jurisdictional analysis [and] declined * * * to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws." *Calder*, 465 U.S. at 790-791, 104 S.Ct. 1482, 79 L.Ed.2d 804. Nonetheless, the practical impact of the majority's holding in this case is to unnecessarily chill the exercise of free speech.

{¶ 82} Because Roberts's conduct does not establish minimum contacts with Ohio sufficient to comport with due process, I would reverse the judgment of the court of appeals.

LANZINGER, J., concurs in the foregoing opinion.

_____

Brett Jaffe and Dennis C. Belli, for appellee.

Kepko & Phillips Co., L.P.A., William J. Kepko, and Sherry M. Phillips, for appellant.

_____