DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Huron County Court of Common Pleas, Juvenile Division, that awarded custody of Reagan L. to her maternal grandparents, appellees James and Bonnie R. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant Christopher L., Reagan's father, sets forth the following assignments of error:
 {¶ 3} "I. The trial court erred in permitting appellees to file a motion for temporary custody, legal custody and emergency shelter care hearing and participate in the case where the appellees lacked standing as they were not parties.
 {¶ 4} "II. The trial court erred in finding that appellant was unsuitable to have custody.
 {¶ 5} "III. The trial court denied the plaintiff due process of law guaranteed by the United States Constitution by awarding custody to a third party.
 {¶ 6} "IV. The trial court erred in relying on testimony barred by the rules of evidence in making an award of custody to appellees."
 {¶ 7} The undisputed facts that are relevant to the issues raised on appeal are as follows. Reagan L. was born January 31, 1997 to appellant Christopher L. and Heather D.R., who were not married to each other. Heather was designated residential parent and, after parentage was determined, appellant was ordered to pay child support. In July 1999, appellant filed a motion to establish visitation and, in August 1999, he was granted visitation and companionship with Reagan. Reagan lived with her mother until Heather placed the child with her brother and sister-in-law on February 6, 2003 when Heather began undergoing treatment for cancer. Heather died on March 25, 2003 and, three days later, appellant filed a pro se motion for custody of Reagan. On April 4, 2003, appellant picked up Reagan for visitation and subsequently refused to return her. On April 7, 2003, appellant filed a second motion for temporary custody, this time through counsel. On April 8, 2003, appellees James and Bonnie R. filed a motion in which they requested an emergency shelter care hearing and that they be joined as party defendants in this matter for the purpose of being granted temporary and legal custody of Reagan. On April 10, 2003, a pretrial and shelter care hearing was held on the motions. At that time, appellant raised the issue of appellees' standing to participate in the proceedings and his objection was noted by the court. Testimony was heard and, pending final hearing, the trial court placed Reagan in the temporary custody of appellees with appellant to have weekend visitation. The trial court further ordered the parties to participate in a mediation session on May 16, 2003. Appellant failed to appear for mediation as scheduled and the trial court thereafter issued a writ for contempt of court ordering appellant to appear before the court on June 2, 2003, for a show cause hearing. Mediation was rescheduled for June 21, 2003, and appellant again failed to appear.
 {¶ 8} The matter was set for trial on September 29, 2003, on the citation for contempt, the motion for change of custody filed by appellant and the motion for legal custody filed by appellees. Prior to the commencement of trial, appellant was found in contempt for failure to attend mediation as ordered. The trial court also stated at that time that it was taking judicial notice of findings of fact journalized April 28, 2003, with regard to the issue of custody. The trial court then heard the testimony of appellant, his wife, his mother-in-law and his mother. Appellees both testified on behalf of their case and presented the testimony of two police officers who had recently had contact with appellant. In its judgment entry filed October 22, 2003, the trial court found that it would be detrimental to Reagan to be placed in the custody of her father and that it was in the child's best interest for legal custody to be awarded to her maternal grandparents. Appellant was granted parenting time pursuant to the Huron County Juvenile Court guidelines. It is from that judgment that appellant appeals.
 {¶ 9} In his first assignment of error, appellant asserts that the trial court should not have permitted appellees to file their motions for temporary custody, legal custody and an emergency shelter care hearing because they were not parties. Appellant argues that at the time the motions were filed appellees did not come under any of the categories of persons included as parties pursuant to Juv.R. 2(Y).
 {¶ 10} Hearings for legal custody of a child are governed by the Rules of Juvenile Procedure. Juv.R. 1(A). Pursuant to Juv.R. 2(Y), the term party as used throughout the juvenile rules "* * * means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court."
 {¶ 11} Ohio courts have held in custody mattters that the trial court is permitted to "include individuals not specifically otherwise designated a party but whose presence is necessary to fully litigate an issue presented in the action." In re Parsons
(May 29, 1997), 9th Dist. No. 95CA006217; In re Franklin
(1993), 88 Ohio App.3d 277. In this way, the court is able to "protect and adjudicate all legitimate claims, protect all interests appearing, avoid multiple litigation and conserve judicial time in the orderly administration of justice."Franklin, supra, at 280. Further, the trial court's determination whether to include a person as a party will not be reversed absent a showing of an abuse of discretion. Parsons,
supra. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 12} This court is not pursuaded that the trial court abused its discretion in allowing appellees to participate in the litigation of this matter. Clearly, as Reagan's grandparents who had spent a significant amount of time with the child since her birth, appellees' presence was necessary to fully litigate the issue of Reagan's custody and to protect the interests of all individuals involved — particularly Reagan, who, as the trial court determined, was too young to express her own wishes and concerns with respect to this matter. The trial court's decision to allow appellees to proceed as parties in this case was not unreasonable, arbitrary or unconscionable and, accordingly, appellant's first assignment of error is not well-taken.
 {¶ 13} In his second assignment of error, appellant asserts that the trial court erred by finding that awarding custody to him would be detrimental to Reagan. Appellant argues that the trial court did not consider his "general suitability" as a parent, but made a "societal judgment" based on appellant's police contacts, unemployment, failure to attend mediation and failure to pay child support. Appellant further argues that there was no evidence that any harm had ever befallen Reagan as a result of his shortcomings.
 {¶ 14} With regard to legal custody of a child, the Supreme Court of Ohio in In re Perales (1977), 52 Ohio St.2d 89, determined that a trial court must find the existence of one of the following circumstances by a preponderance of the evidence before awarding custody to a non-parent: the parent abandoned the child; the parent contractually relinquished custody of the child; the parent has become totally incapable of supporting or caring for the child; or an award of custody to the parent would be detrimental to the child.
 {¶ 15} The trial court in this case heard relevant testimony from numerous individuals and, based thereon, made detailed findings in support of its decision to award custody of Reagan to appellees. The trial court found that Reagan had never resided with appellant, although appellant had exercised some visitation. Specifically as to appellant's suitability, the trial court found that appellant's current wife had been the victim of two domestic violence assaults committed by appellant, who was convicted of domestic violence on both occasions; on at least two occasions, appellant was taken into custody by the Norwalk Police after they responded to calls and found him so intoxicated that he was at risk of harm to himself, although appellant testified that he had successfully completed court-ordered alcohol counseling; appellant was unemployed although he had no health problems or disabilities; appellant failed to attend two court-ordered mediation sessions, for which he was found in contempt of court; appellant had not followed the court's order of child support and was $1,046.35 in arrears as of August 31, 2003; at the time of trial, appellant's driver's license was suspended and he had a history of 12 prior suspensions; appellant had driven with Reagan as a passenger during the summer of 2003 despite his not having a valid license; appellant did not know the name of Reagan's teacher for the current or previous school years, the name of the school principal or the name of Reagan's counselor; and appellant had never been to Reagan's school, had made no contact with any school official and was completely uninvolved in his daughter's education and counseling. The trial court further found that appellant lives with his wife and their two children and his wife's two sons from previous relationships and that appellant's home is physically suitable for Reagan.
 {¶ 16} With regard to appellees' suitability, the trial court found that they were present for each court-ordered mediation session; they live in a rural area in a home where Reagan has her own room; their home provides Reagan with a structured, organized environment with reasonable rules that are posted on the refrigerator; Reagan is doing well in school; appellee grandfather takes Reagan to school in the morning and picks her up in the afternoon and routinely speaks with her teacher; appellees actively support Reagan's education; appellees take Reagan to counseling to address the grief and anxiety she has experienced since the death of her mother and actively support the counseling; appellee grandfather is retired from full-time employment and is in good health; appellee grandmother is employed on a full-time basis; and appellees' home is physically suitable for Reagan.
 {¶ 17} Finally, the trial court found, after an in camera interview with Reagan, that the child did not have sufficient reasoning ability to express her wishes and concerns regarding the allocation of parental rights and responsibilities for her care. The court also found that Reagan has been diagnosed with attachment disorder and attention deficit disorder for which she receives daily medication. The trial court concluded that Reagan has above average needs and requirements and will continue to require heightened parental attention and supervision due to problems she has experienced since her mother's death.
 {¶ 18} Upon review of the record, this court finds that the trial court thoroughly considered the evidence presented as it related to Reagan's care and custody and did not err by finding, first, that there was a preponderance of evidence that an award of custody to appellant would be detrimental to Reagan and, second, that an award of custody to appellees would be in the child's best interest. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 19} In his third assignment of error, appellant asserts that the trial court denied him due process of law by awarding custody to a third party. Appellant argues that the trial court's decision denied him his fundamental right to make decisions concerning the care, custody and control of his child. Appellant further argues that the trial court found that awarding custody to him would be detrimental to Reagan only because the court perceived that appellees could do a better job of parenting her.
 {¶ 20} In support of his arguments, appellant claims that the unsuitability factor set forth in Perales, supra, gives unfettered discretion to the trial judge. Appellant further cites the decision of the United States Supreme Court in Troxel v.Granville (2000), 530 U.S. 57, in which the court stated that "* * * it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id. at 66. In Troxel, the court found a Washington statute permitting grandparents to seek visitation rights with their grandchildren "breathtakingly broad" and unconstitutional as applied. While Troxel recognized the fundamental right of parents to make child-rearing decisions, it arose from a visitation dispute between paternal grandparents and the children's mother, rather than from a custody dispute as in this case. The issue in Troxel was whether it was a violation of due process for the state to reach into the private realm of the family and replace a fit parent's judgment regarding her child's best interest with its own judgment. Troxel therefore is not applicable to the case before us. Appellant's argument is further put into perspective by the decision in Thrasher v.Thrasher (1981), 3 Ohio App.3d 210 at syllabus, which stated: "In a child custody dispute between the parent of a child and a non-parent brought under R.C. 3109.04, a suitable parent has a paramount right to custody so long as such custody is notdetrimental to the child." [Emphasis added.] The trial court in this case made a clear finding that an award of custody to appellant would be detrimental to Reagan.
 {¶ 21} Based on the foregoing, this court finds that the trial court did not deny appellant his right to due process by awarding custody of Reagan to appellees and, accordingly, appellant's third assignment of error is not well-taken.
 {¶ 22} In his fourth assignment of error, appellant asserts that the trial court erred by considering the testimony of two Norwalk police officers regarding their contact with appellant in May and June 2003. Appellant argues that it is clear from the trial court's findings of fact that it relied upon the officers' testimony in reaching its conclusion with regard to custody of Reagan. Appellant argues that the officers' testimony was not probative of any factors relevant to custody but was designed to show that he was a "rowdy drunkard." Appellant further asserts that the officers' testimony was barred by Evid.R. 404(B), which prohibits evidence of prior "bad acts."
 {¶ 23} The two officers testified as to two separate incidents in May and June 2003, wherein they responded to calls while on duty and found appellant highly intoxicated, in one instance barely able to stand, and in both instances so intoxicated that the officers determined that he posed a risk of harm to himself. Appellant, however, testified at trial that he had successfully completed a court-ordered AA program. While appellant was vague on exactly when he completed the program, he indicated that the incidents with the police occurred after he participated in the program. Appellant's testimony that he completed the AA program opened the door for further testimony which would tend to rebut his statements. We note that the officers' testimony, offered by appellees, was taken before appellant's testimony in order to accommodate the officers' work schedules, but the record indicates that there was no objection by either party to the court calling the witnesses out of order. It is clear that the officers' testimony as to the two incidents wherein they observed appellant to be highly intoxicated was not offered as evidence of "other crimes, wrongs or acts." Evid.R. 804(B). The testimony was relevant, however, to the issue of appellant's suitability to parent his daughter and to the issue of appellant's credibility. Accordingly, we find that the trial court did not err by allowing and considering the officers' testimony and appellant's fourth assignment of error is not well-taken.
 {¶ 24} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Lanzinger, J. and Singer, J. concur.