[Cite as *In re E.M.*, 2023-Ohio-573.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

In re E.M.

Court of Appeals No.  S-22-021

Trial Court No.  22130082

**DECISION AND JUDGMENT**

Decided:  February 24, 2023

* * * * *

Dean E. Ross, for appellee.

Andrew R. Mayle and Benjamin G. Padanilam, for appellant, T.S.

Laurel A. Kendall, for appellant, L.M.

* * * * *

**ZMUDA, J.**

## I.    Introduction

{¶ 1} Appellants, L.M. ("mother") and T.S. ("grandmother"), appeal the judgment of the Sandusky County Court of Common Pleas, Juvenile Division, granting a motion for permanent custody filed by appellee, Sandusky County Job and Family Services

("SCJFS"), thereby terminating mother's parental rights with respect to her minor child, E.M., and denying grandmother's motion to intervene.[1] Finding no error below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On April 29, 2021, SCJFS filed a complaint alleging dependency and neglect with respect to E.M. According to the complaint, SCJFS received a referral regarding E.M. on March 1, 2021, in which the agency was informed that mother was allowing E.M. to be exposed to domestic violence involving mother's sister and mother's boyfriend, P.D.[2] During its ensuing investigation, SCJFS determined that mother was minimizing the threat of domestic violence and unjustifiably blaming her sister for such domestic violence. Consequently, SCJFS filed its complaint and requested an award of temporary custody and protective supervision of E.M.

{¶ 3} An initial hearing on SCJFS's complaint was held on May 19, 2021, at which time mother consented to an award of interim temporary custody and placement of E.M under the protective supervision of SCJFS. On May 26, 2021, SCJFS filed a case plan concerning E.M., with a goal of reunifying E.M. with mother. In the case plan,

---

[1] E.M.'s father, R.M., did not file a notice of appeal challenging the judgment of the juvenile court, and he is therefore not a party to this appeal.
[2] Mother has another daughter, D.R., with P.D. The proceedings in the juvenile court involved both E.M. and D.R., but this appeal only pertains to parental rights regarding E.M.

2.

SCJFS noted several concerns including a history of domestic violence between P.D. and mother's sister, mental health issues with mother and P.D., substance abuse issues with P.D., and mother's lack of stable housing and employment. Thereafter, the matter proceeded through pretrial discovery.

{¶ 4} On June 10, 2021, the parties appeared before the juvenile court for an adjudicatory hearing, at which mother consented to the juvenile court's finding of neglect and dependency and the matter was continued for a dispositional hearing on July 6, 2021. At the dispositional hearing, mother consented to the juvenile court's award of temporary custody and protective supervision to SCJFS.

{¶ 5} Thereafter, on April 13, 2022, SCJFS filed a motion for permanent custody of E.M. and a request for a permanency hearing. In support of its motion, SCJFS argued that it had "exhausted all appropriate and available placement options for [E.M.]" in light of mother's permanent relocation to Tennessee on January 29, 2022. According to SCJFS, mother's contact with E.M. was limited to one Skype visit per week, and mother informed her caseworker "on several occasions she does not plan on returning to Fremont, Ohio to work on reunification of [E.M.] and that she feels [E.M.] is in a placement that can and will provide her with a loving, safe, and stable home environment."

{¶ 6} On August 1, 2022, mother appeared before the juvenile court for a hearing on SCJFS's motion for permanent custody. At the outset of the hearing, the court noted

3.

grandmother's attendance at the hearing and permitted grandmother to remain at the hearing at mother's request. Ultimately, mother indicated to the juvenile court that she wished to consent to an award of permanent custody of E.M. to SCJFS. After a thorough colloquy with mother, the court took the matter under advisement.[3]

{¶ 7} While the motion for permanent custody remained pending, on August 8, 2022, grandmother filed a motion to intervene, requesting custody of E.M. and an emergency hearing on the motion. In support of her motion, grandmother argued that E.M.'s foster caregivers were working outside the home and leaving E.M. in the care of a babysitter during the daytime, which caused E.M. to suffer from reactive attachment disorder. Grandmother filed an amended motion to intervene on August 12, 2022, in which she asserted that "unanticipated changes in foster parents and changing conditions with the minor child demonstrate that unusual circumstances exist to favor intervention here."

{¶ 8} In response to grandmother's motion, SCJFS filed a memorandum in opposition on August 11, 2022, arguing that grandmother's motion was procedurally defective under Civ.R. 24(C) because it was not accompanied by a pleading and was untimely filed eight days after the hearing at which mother consented to an award of permanent custody.

---

[3] At the end of the hearing, mother expressed a desire, shared by grandmother, that grandmother be permitted to adopt E.M. following the award of permanent custody.

4.

{¶ 9} Upon consideration of grandmother's motion to intervene, the juvenile court issued its judgment entry on August 25, 2022. In its entry, the court denied grandmother's motion, finding that grandmother's safety concerns were unfounded in light of the protections afforded E.M. while in the care of SCJFS and under the court's oversight. In denying the motion, the court further emphasized that the permanent custody hearing had already taken place and grandmother was in attendance at that hearing.

{¶ 10} On September 23, 2022, mother and grandmother each filed notices of appeal, challenging only the juvenile court's denial of grandmother's motion to intervene.[4]

{¶ 11} While appellants' appeals were pending before this court, on October 28, 2022, the juvenile court issued its judgment entry on SCJFS's motion for permanent custody. In its ten-page entry, the juvenile court found that mother consented to the placement of E.M. into the permanent custody of SCJFS. Further, the court found that E.M. could not and should not be placed with mother within a reasonable amount of time, and that permanent custody to SCJFS was in E.M.'s best interest. Therefore, the court

---

[4] Although mother filed a notice of appeal following the juvenile court's ruling on grandmother's motion to intervene, she does not raise an argument as to that ruling in her brief to this court. Rather, mother's argument is limited to the juvenile court's award of permanent custody to SCJFS, which was the basis for mother's filing of an amended notice of appeal on November 1, 2022.

5.

granted SCJFS's motion for permanent custody and terminated mother's parental rights concerning E.M.

{¶ 12} Thereafter, on November 1, 2022, mother filed an amended notice of appeal, timely adding the juvenile court's October 28, 2022 judgment entry. After grandmother filed her notice of appeal, on December 7, 2022, SCJFS filed a motion to dismiss the appeal due to grandmother's failure to file a brief. Two days later, grandmother's appellate counsel filed a notice of appearance. Grandmother's brief was then filed on December 27, 2022. Accordingly, we find the motion to dismiss not well-taken and will examine the merits of grandmother's arguments.

### B. Assignments of Error

{¶ 13} On appeal, mother assigns the following error for our review:

The trial court committed plain error, or in the alternative, abused its discretion, when it held a Permanent Custody Hearing concerning termination of parental rights of the minor child E.M. on August 1, 2022 arguable without a record of service to both parents, as required by R.C. 2151.414(A)(1).

{¶ 14} Grandmother also assigns one error for our review, as follows:

The trial court erroneously denied appellant's motion to intervene in a case affecting the permanent custody of her granddaughter.

6.

## II.    Analysis

### A.    Mother's Assignment of Error

{¶ 15} In her sole assignment of error, mother argues that the juvenile court should not have held a hearing on SCJFS's motion for permanent custody without first ensuring that both parents were served with notice of the hearing. Notably, mother does not argue that *she* was never served with notice of the hearing. Instead, she argues that *R.M.* was not served with notice and thus the juvenile court lacked personal jurisdiction over R.M. under R.C. 2151.414(A)(1).

{¶ 16} Under R.C. 2151.414(A)(1), upon the filing of a motion for permanent custody, "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem." The notice requirement found in R.C. 2151.414(A)(1) "merely ensures that the juvenile court has personal jurisdiction over the parents" and thus "involves the juvenile court's personal jurisdiction over the parents, not its subject matter jurisdiction to decide a motion for permanent custody." *In re Kincaid*, 4th Dist. Lawrence No. 00CA3, 2000 WL 1683456, *4 (Oct. 27, 2000), citing *In re Ciara B.*, 6th Dist. Lucas No. L-97-1264, 1998 WL 355869 (Jul. 2, 1998). Personal jurisdiction is a question of law that appellate courts review de novo. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27.

7.

{¶ 17} Personal jurisdiction over a party may be obtained "through proper service of process" and "by the voluntary appearance of the party * * *." *In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, ¶ 43, citing *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). Indeed, "'[a]n objection to personal jurisdiction is waived by a party's failure to assert a challenge to such jurisdiction at [his or her] first appearance in the case.'" *In re K.M.*, 12th Dist. Butler No. CA2019-01-015, 2019-Ohio-1833, ¶ 32, quoting *In re A.L.W.*, 11th Dist. Portage Nos. 2011-P-0050, 2011-P-0051, and 2011-P-0052, 2012-Ohio-1458, ¶ 37.

{¶ 18} Here, mother argues that the juvenile court did not effectuate notice of the permanent custody hearing to R.M. prior to conducting the hearing. On that basis, mother contends that the juvenile court's judgment granting permanent custody to SCJFS is void. Mother's argument fails for two reasons.

{¶ 19} First, mother lacks standing to assert this argument. In our decision in *In re Ciara B.*, we explained that "appeals are permitted only to correct errors injuriously affecting the appellant" and thus errors committed against a nonappealing party may only be raised by the appellant if such errors are prejudicial to the appellant's rights. *In re Ciara B.* at *2. There, like here, the mother of the children at issue challenged the juvenile court's award of permanent custody on the basis that the court lacked jurisdiction to enter the order because it failed to notify the putative father of the permanent custody proceedings as required under R.C. 2151.414(A). *Id.* In rejecting that

8.

argument, we found that the mother presented no evidence to show that the court's failure to serve the putative father prejudiced her ability to defend against the permanent custody award. *Id.* Further, we explained:

> While a valid personal judgment cannot be rendered in the absence of personal jurisdiction over a party, * * * personal jurisdiction can be waived, Civ.R. 12(H). We are therefore of the opinion that only [father] can raise the validity of the judgment against him. Therefore, the judgment entered by the juvenile court as against appellant is not rendered void due to any alleged lack of service on the children's putative father. Further, we find * * * that appellant, in the absence of a showing of prejudice to her case, cannot raise the claimed lack of service on [father] as error on appeal.

*Id*.

{¶ 20} Here, mother fails to demonstrate that she suffered any prejudice relating to the juvenile court's provision of notice of the permanent custody hearing to R.M. This fact alone warrants rejection of mother's argument.

{¶ 21} Second, mother's argument is inconsistent with the record in this case. Contrary to mother's assertion that R.M. received no notice of the permanent custody hearing, the juvenile court confirmed at the outset of the hearing that R.M.

> previously consented to the motion being granted at our last proceeding and indicated he would not be participating in the proceeding moving forward,

9.

so his attendance was not expected, and he's appropriately excused from the proceeding today, having previously waived his rights and consented to the motion being granted.

Mother did not object to the juvenile court's understanding that R.M. previously waived his right to be present at the proceedings, nor did she contest the court's articulation that R.M. consented to the award of permanent custody of E.M. to SCJFS.

{¶ 22} On appeal, mother notes the juvenile court's statement concerning R.M.'s waiver of service, but responds that "there is no record of the prior hearing" referenced by the juvenile court. According to mother, the audio recording of the prior hearing, which took place on June 13, 2021, consists of "46 minutes of blank tape." The state does not challenge this assertion, but rightly points out that mother "had an obligation upon discovering the deficiency in the record on appeal to supplement the record pursuant to App.R. 9(C) or (D)." Absent such action, we must presume the validity of the proceedings, including the juvenile court's recitation of what transpired at the June 13, 2021 hearing involving R.M.'s waiver of service and consent to permanent custody. *See Knapp v. Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980) ("The duty to provide a transcript for appellate review falls upon the appellant. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.").

10.

{¶ 23} In sum, mother has not demonstrated that she was prejudiced in any way by the juvenile court's provision of notice to R.M. concerning the permanent custody hearing.  Further, the record on appeal reflects the juvenile court's understanding that such notice was waived by R.M. during the June 13, 2021 hearing.  Mother did not challenge the juvenile court's understanding at the permanent custody hearing and she has failed to supplement the record on appeal under App.R. 9 to provide this court with a complete record that would enable us to evaluate her claim that R.M. did not actually waive his right to notice at the prior hearing.  For these reasons, we find no merit to mother's jurisdictional argument.

{¶ 24} Next, mother argues in the alternative that her consent to the juvenile court's award of permanent custody was invalid because she was "arguably" entering her consent only to allow grandmother to adopt E.M., not because she wanted to terminate her parental rights.  This argument is baseless in light of the record at the permanent custody hearing.

{¶ 25} In cases involving the termination of parental rights, "it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow."  *Elmer v. Lucas Cty. Children Serv. Bd.*, 36 Ohio App.3d 241, 245, 523 N.E.2d 540 (6th Dist.1987).  Therefore, "fundamental due process requires that when a parent is waiving the fundamental right to care for and have custody of a child, the trial court must have a

11.

meaningful dialogue with that parent to be certain that the consent is truly voluntary." *In re Terrence*, 162 Ohio App.3d 229, 2005-Ohio-3600, 833 N.E.2d 306, ¶ 89 (6th Dist.).

{¶ 26} During the permanent custody hearing in this case, the juvenile court engaged mother in a thorough colloquy to ensure that she understood the consequences of her consent to an award of permanent custody to SCJFS. During that colloquy, mother and grandmother expressed a desire to have grandmother adopt E.M. This prompted the juvenile court to explain that grandmother could petition the court for adoption of E.M., but that adoption proceedings were separate from the permanent custody matter before the court. Thereafter, the court addressed mother in the following colloquy:

> THE COURT: What I will tell you is, I will make sure that I note in the record that the Mother's preference would be that Grandmother be considered for the adoption, and, as I indicated earlier, I cannot in any way guarantee that that can occur or that it can be approved, but I can make sure that it reflects that that is your desire, so that that is in there, and then, ultimately, as that process moves forward separately from this, that can be looked at or considered if it's appropriate.
>
> [Mother], I just want to make it very clear that you understand that that is something that I have no ability to tell you, you know, can happen or won't happen or will or shouldn't or whatever. I want to make sure that your

12.

consent today is in no way conditioned on that, but I can make sure that the record shows that would be your desire and your wishes.

[MOTHER]: That's fine, Your Honor.

THE COURT: Is that fair?

[MOTHER]: Yes.

THE COURT: Okay. Does that address what you wanted to put on the record, or is there anything else?

[MOTHER]: I believe that's it.

{¶ 27} In light of the foregoing, we find that the record expressly contradicts mother's assertion that her consent was premised upon grandmother's ability to adopt E.M. The juvenile court was careful to ensure that mother's consent was voluntarily entered and untethered to any subsequent adoption proceedings. Moreover, mother confirmed her desire to consent to permanent custody after the adoption discussion and prior to the court's acceptance of her consent. In short, there is nothing in the record to suggest that mother's consent was anything but voluntary, knowing, and intelligent.

{¶ 28} Accordingly, mother's sole assignment of error is not well-taken.

### B. Grandmother's Assignment of Error

{¶ 29} In her sole assignment of error, grandmother argues that the juvenile court erred in denying her motion to intervene.

**{¶ 30}** In custody matters, we have held that a trial court is permitted to "include individuals not specifically otherwise designated a party but whose presence is necessary to fully litigate an issue presented in the action." *Christopher A.L. v. Heather D.R.*, 6th Dist. Huron No. H-03-040, 2004-Ohio-4271, ¶ 11, citing *In re Parsons*, 9th Dist. Lorain No. 95CA006217, 1996 WL 285370 (May 29, 1996). "A trial court's determination of whether to include a person as a party will not be reversed absent a showing of an abuse of discretion." *In re R.V.*, 6th Dist. Lucas Nos. L-10-1278, L-10-1301, 2011-Ohio-1837, ¶ 44. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 31}** In a permanent custody action, a grandparent may file a motion to intervene, and the denial of the motion will constitute an abuse of discretion "if the grandparent had a 'legal right to or a legally protectable interest in custody or visitation with their grandchild, where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant control over, or assumed parental duties for the benefit of, their grandchild.'" *In re R.V.* at ¶ 45, quoting *In re Schmidt*, 25 Ohio St.3d 331, 338, 496 N.E.2d 952 (1986).

**{¶ 32}** Here, there was no evidence that grandmother stood in loco parentis, exercised significant control over, or assumed parental duties for the benefit of E.M. at the time of the permanent custody hearing. Grandmother complains that this lack of

14.

evidence is due to the juvenile court's denial of her motion without a hearing. However, grandmother's argument ignores the untimeliness of her motion, which was filed several days *after* the permanent custody hearing was held. Thus, any inability to develop the record as to grandmother's relationship with E.M. is attributable to grandmother's untimeliness, not the juvenile court's failure to hold a hearing at the eleventh hour of the permanent custody proceedings.

{¶ 33} Moreover, grandmother cannot demonstrate that she was prejudiced by her inability to intervene in the permanent custody proceedings. R.M and mother each consented to the award of permanent custody to SCJFS. With that in mind, grandmother "cannot attempt to litigate the termination of parental rights when the parents chose not to do so." *In re A.P.*, 9th Dist. Summit No. 23698, 2007-Ohio-5413, ¶ 14. Thus, we find that the juvenile court's denial of grandmother's motion to intervene was not an abuse of discretion.

{¶ 34} Accordingly, grandmother's sole assignment of error is not well-taken.

### III.    Conclusion

{¶ 35} For the foregoing reasons, the judgment of the Sandusky County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

Betsy Luper Schuster, J.

Terri Jamison, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

Judges Betsy Luper Schuster and Terri Jamison, Tenth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.